**Cynthia HEAD, as legal representative of the estate of her daughter, Janet Faith Riehs, Petitioner,**

v.

**SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–2644V.

United States Claims Court.

July 23, 1992.

Christian Hill, Houston, Tex., for petitioner.

Alfonso J. Montano, with whom were Asst. Atty. Gen., Stuart M. Gerson, Helene M. Goldberg, Director, and John Lodge Euler, Deputy Director, Washington, D.C., for respondent.

OPINION

ANDEWELT, Judge.

In this action, petitioner, Cynthia Head, seeks compensation under the National

Childhood Vaccine Compensation Act of 1986, 42 U.S.C. § 300aa-1 *et seq.* (the Vaccine Act), for injuries sustained by her daughter, Janet Riehs. Petitioner brings this action in her capacity as the representative of the estate of her daughter.[1] Petitioner alleges that as a result of a DPT (diphtheria, pertussis, and tetanus) vaccination administered on August 24, 1977, Janet Riehs became encephalopathic and comatose, and remained in such a condition until her death in November 1989. In a March 6, 1992, order, the special master dismissed the petition on the ground that the petition was barred under the Vaccine Act both on jurisdictional and evidentiary grounds. The petition is currently before the court on petitioner's motion for review of the special master's decision. For the reasons set forth herein, the special master's dismissal is affirmed.

I.

The special master dismissed the petition based on a 1982 settlement of a related Texas state court damage action brought against the Victoria County Health Department and the Texas Department of Health. The Texas action was brought by Cindy Sweat (currently known as Cynthia Head) in two distinct capacities, (1) individually and pursuing her own damages relating to her daughter's injuries, and (2) as a representative for her minor daughter, Janet Riehs, and pursuing Janet's damages. The Texas complaint alleged, *inter alia,* that the defendants therein were negligent in not disclosing the risks associated with the administration of a DPT vaccine. The terms of the 1982 settlement were contained in a "FULL AND COMPLETE RELEASE" in which both Cindy Sweat and Janet Riehs released the defendants from any and all liability relating to the vaccine inoculation. The release provided for the payment of $3,000 directly to Cindy Sweat, with no money to be paid directly to Janet Riehs. The release explained this payment as follows:

As a result of injuries sustained by Janet Riehs, she has been hospitalized in Harris County, Texas, and all of her present care and support are being furnished by the State Department of Human Resources Supplemental Income Program; because of her age, nature of the injury and present physical condition, it is agreed by the parties hereto that all of the proceeds of this settlement shall be paid directly to Cindy Sweat, for the purpose of reimbursing Cindy Sweat for expenses incurred by her, and by her alone, in connection with Janet's injury, including expenses in traveling to Houston while Janet was hospitalized there in the past, and for similar future expenses. It is recognized by all parties that the monetary damages that could be recovered by Janet Riehs, as well as the monetary value of the expenses incurred by Cindy Sweat, individually, far exceed the amount of the settlement agreed upon hereby; the amount agreed upon is a negotiated amount, between the parties hereto, taking into consideration the expenses incurred by the parties in prosecuting this lawsuit, the probable outcome thereof, the probable expenses of future litigation, and the rights of all parties.

The total money received in settlement of this claim is therefore to be distributed $3,000.00 to Cindy Sweat, individually, and $0 to Janet Riehs, a minor, suing herein by and through her mother, Cindy Sweat, as next friend.

The Texas court explained its acquiescence in this settlement notwithstanding that Janet Riehs received no direct monetary payment, as follows:

[T]he court is of the opinion that such agreement of settlement ... is to the best interest of the minor Plaintiff, and the Court expressly finds that said settlement is binding upon [Janet Riehs] even though no money is specifically being paid to her or on her behalf, and the

---

1. Certain filings in this action indicate that Ms. Head also petitioned for herself individually. However, the Vaccine Act makes no provision for such petitions and neither party has con-

tended that Ms. Head has standing in any capacity other than as representative of the estate of her daughter.

Court does hereby approve the agreement or settlement. . . .

Years later, on October 1, 1990, Cynthia Head, the former Cindy Sweat, filed the instant petition. The special master dismissed the petition on the ground that the 1982 settlement of the Texas action bars petitioner from any subsequent recovery under the Vaccine Act for Janet Riehs' injuries. The special master concluded: "Clearly, the statute bars this petition on both jurisdictional and evidentiary grounds. In addition, policy demands that petitioner's claim must fall in order to prevent collusion and/or duplicative awards of damages." *Head v. Secretary, HHS*, No. 90–2644V, slip op. at 4, 1992 WL 59710 (Cl.Ct. Mar. 6, 1992).

## II.

Under 42 U.S.C. § 300aa–11, entitled "Petitions for compensation," the legal representative of a deceased person may file a petition seeking compensation under the Vaccine Act. Section 11(b)(1)(A) provides, in pertinent part:

[A]ny person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, or the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table may, if the person meets the requirements of subsection (c)(1) of this section, file a petition for compensation under the Program.

Section 11(c)(1) in turn defines with specificity the information a petitioner must include in his or her petition to secure compensation under the Vaccine Act. Section 11(c) provides, in pertinent part:

A petition for compensation under the Program for a vaccine-related injury or death shall contain—

(1) . . . an affidavit, and supporting documentation, demonstrating that the person who suffered such injury or who died—

\* \* \* \* \* \*

(E) has not previously collected an award or settlement of a civil action for damages for such vaccine-related injury or death. . . .

Under 42 U.S.C. § 300aa–13, entitled "Determination of eligibility and compensation," a petitioner is entitled to an award of compensation if the petitioner demonstrates the truth of the information contained in the petition and if the evidence does not demonstrate a nonvaccine-related cause of the injury or death. Section 13(a) provides, in pertinent part:

(1) Compensation shall be awarded under the Program to a petitioner if the special master or court finds on the record as a whole—

(A) that the petitioner has demonstrated by a preponderance of the evidence the matters required in the petition by section 300aa–11(c)(1) of this title, and

(B) that there is not a preponderance of the evidence that the illness, disability, injury, condition, or death described in the petition is due to factors unrelated to the administration of the vaccine described in the petition.

## III.

■ Herein, the special master's conclusion that the instant petition is barred on evidentiary grounds rests on her determination that petitioner could not satisfy the requirements for compensation under Section 13(a)(1)(A), because petitioner could not satisfy the requirement concerning prior settlement of a civil action for vaccine-related damages. The special master explained her rationale as follows:

[S]ubsection 11(b) . . . states, in effect, that Janet, if she were not a minor and were still alive, would have to satisfy the requirements of subsection 11(c)(1) in order to bring a petition. But, since Janet was a minor and subsequently died, her legal representative (Cynthia Head, previously Cindy Sweat) must satisfy the requirements of subsection 11(c)(1)(E). This she cannot do because she settled the prior civil action on behalf of Janet's interests, including any future personal injury and death. Since she cannot satis-

fy the requirements of subsection 11(c)(1)(E), she also cannot meet the standard of proof enunciated in subsection 13(a)(1)(A). Petitioner cannot make out a prima facie case.

*Head*, slip op. at 5–6.

The special master's interpretation of the statute and application of its terms in this regard are correct. Had Janet Riehs been able to bring the instant action on her own, she would have been obliged under Section 11(c)(1)(E) to present documentation to support the conclusion that "the *person who suffered such injury or who died* ... has not previously collected an award or settlement of a civil action for damages" (emphasis added). Since Cynthia Head brings the instant petition as a legal representative of her daughter, Ms. Head is required to present precisely the same proof to secure recovery for her daughter's estate. Hence, the proper focus under Sections 11(c)(1)(E) and 13(a)(1)(A) is on Janet Riehs, and the pertinent issue is whether Janet Riehs, not Cynthia Head, "collected an award or settlement of a civil action for damages."

Petitioner contends that because Janet Riehs received no direct monetary damages, she never "collected an award or settlement of a civil action for damages." But the word "damages" in this statutory phrase merely defines the required nature of the prior action involved, *i.e.*, it must have been "a civil action for damages." Where, as here, the prior action qualifies as a civil action for damages, the sole pertinent additional requirement for a bar under this section is that in that previous civil action for damages, the injured child "collected an award or settlement." There is no specific requirement that the "collect[ion of the] award or settlement" by the

injured child involve payment of monetary damages directly to the child.

Here, Janet Riehs participated in the settlement of the prior civil action for damages, was bound by that settlement, and "collected" sufficient value for the Texas court specifically to conclude that the settlement was in Janet Riehs' best interest. The value that Janet Riehs received in the settlement included the direct payment of $3,000 to her mother. This payment potentially benefitted Janet Riehs, for example, by enabling her mother to visit her in the hospital. Under the terms of the settlement, the payment was "for the purpose of reimbursing Cindy Sweat for expenses incurred by her ... including expenses in traveling to Houston while Janet was hospitalized there in the past, *and for similar future expenses*" (emphasis added). Janet and her mother also received additional benefits that stemmed from this settlement. The parties to the Texas action agreed to a judgment, entered by the Texas court, which obliged the defendants to pay the "costs of Court" and to pay $150 for the attorney ad litem who had been appointed to represent Janet's interests.[2] In addition, Janet, in effect, personally "collected" an enforceable legal right when she settled the Texas action. Petitioner acknowledges that under Texas law, as a party to the action, Janet had the legal right to bring suit if the terms of the judgment were not satisfied, including the defendants' obligation to pay $3,000 to Janet's mother plus payment of court costs and the attorney ad litem fees.

Section 11(c)(1)(E) requires only that Janet "previously collected a[] ... settlement." There is nothing in the language

---

**2.** As described above, direct benefits to Janet's mother potentially benefitted Janet indirectly. Moreover, had Janet not settled the Texas action and instead litigated it and lost, it is at least possible that Janet might have been personally liable for the fees of the attorney ad litem and for other "costs of Court." In Texas, attorney ad litem fees are treated as costs of court, Tex. R.Civ.P. 173, and these costs are taxed against the unsuccessful party, Tex.R.Civ.P. 131. Had Janet lost the litigation, therefore, the court at least potentially could have taxed part of the costs against her.

Petitioner asserts that under Texas law, such costs are "necessaries" and thus Janet's mother would have been liable for these costs had they been assessed against Janet. However, a parent's joint liability does not of itself always relieve the child, or the child's estate, from potential personal liability. The fact that the costs may have been "necessaries" does not mean that Janet necessarily was legally immune from liability for these costs. *See, e.g.*, 43 C.J.S. *Infants* § 180(b) (1978).

of the statute that requires this court to consider the quantity or the directness of the value received in such a settlement or to conclude that the petitioner failed to "collect[ ] a[ ] ... settlement" where the value received falls below some minimum level. Here, Janet was a party to the settlement, received value from the settlement, and was bound by that settlement; therefore, Janet must be deemed to have "collected a[ ] ... settlement." As a result, petitioner cannot establish a prima facie case for recovery under the Vaccine Act and the special master properly dismissed the petition on that ground.

## IV.

■ The special master also dismissed the petition on the alternative ground that under 42 U.S.C. § 300aa–11(a)(7), the special master lacked jurisdiction to entertain the petition. Section 11(a)(7) provides:

> If in a civil action brought against a vaccine administrator or manufacturer for a vaccine-related injury or death damages are awarded under a judgment of a court or a settlement of such action, the person who brought such action may not file a petition under subsection (b) of this section for such injury or death.

Thus, under Section 11(a)(7), a prerequisite to a bar on the filing of a petition under the Vaccine Act is that there was a previous award of damages under a judgment or a settlement. Here, as described above, in the prior civil litigation, the Texas court awarded $3,000 in damages to Ms. Head in her individual capacity, but awarded no damages to Ms. Head in her capacity as representative of the interests of her daughter, Janet Riehs. The issue, therefore, when applying Section 11(a)(7) is whether that damage award to Ms. Head in her individual capacity bars the instant petition brought by Ms. Head in her capacity as the legal representative of her daughter. The special master concluded that "[p]etitioner herein is barred from bringing this petition because of the language of 11(a)(7).

Ms. Head is the same person who settled a prior civil action. This section is a jurisdictional bar to her petition." *Head,* slip op. at 5.

To the extent the special master concluded that the bar applies because Ms. Head is both the person who received the $3,000 damage settlement and the person who filed the instant petition, the court disagrees with the special master's interpretation of the statute. Ms. Head received the $3,000 damage settlement in a prior civil action in her individual capacity, representing her own personal interests, while she filed the instant petition in her capacity as the representative of the interests of her daughter, Janet Riehs. These two capacities are legally distinct and do not involve actions by the "same person." *See, e.g.,* RUSCC 17; RUSCC, Appendix J ¶ 2(e)(2); 3A J. Moore, J. Lucas, & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 17.26 (2d ed. 1992).

Moreover, since it typically is possible to choose among different potential legal representatives to represent the injured or deceased vaccine recipient,[3] it would not appear to further any rational purpose behind the Vaccine Act to interpret the bar in Section 11(a)(7) to depend upon the identity of the legal representative chosen. Indeed, had Janet Riehs' father, rather than her mother, filed the instant petition in his capacity as the legal representative of his daughter, the argument could not be made that the "same person" both received a damage settlement in the prior action and filed the instant petition. Thus, in applying Section 11(a)(7), instead of focusing on the identity of the legal representative, "the person who brought [the] action" should be interpreted to refer to the person who suffered the vaccine-related injury or death. This interpretation is supported by Section 11(a)(9), which describes the scope of Section 11(a) as follows: "This subsection applies only to a person who has sustained a vaccine-related injury or death and who is

---

**3.** Under 42 U.S.C. § 300aa–33(2), the term "legal representative" means "a parent or an individual who qualifies as a legal guardian under state law." Thus, either parent apparently would qualify as a "legal representative."

qualified to file a petition for compensation under the Program." [4]

But the fact that different "persons" brought the instant petition and collected damages in the prior civil action does not necessarily mean that the Section 11(a)(7) bar does not apply. The reference to damages in Section 11(a)(7) is written in the passive voice—it merely states that "damages are awarded" and does not specify to whom. Therefore, the argument can be made here that it is enough that damages were awarded in the prior civil action to someone and it is not critical whether they were awarded directly to the vaccine recipient. But, on the other hand, the reference in Section 11(a)(9) that "[t]his subsection applies only to a person who has sustained a vaccine-related injury" can be interpreted to imply that the bar in Section 11(a)(7) is intended to apply only when "damages are awarded" to the person who sustained the injury. That interpretation is also favored by the use of the singular term "the person" in Section 11(a)(7) ("the person who brought such action may not file a petition under subsection (b) of this section for such injury or death"). The singular term suggests that Section 11(a)(7) may be focused exclusively on the injured person and may not at all concern situations where there were multiple plaintiffs in the prior litigation.

The court is hesitant to come to a final conclusion as to the proper interpretation of an arguably ambiguous statute without an in-depth look into the legislative history of Section 11(a)(7).[5] However, neither par-

---

4. The parties dispute the proper standard of review in this court of the special master's interpretation of the pertinent provisions of the Vaccine Act. Petitioner contends that the instant interpretations of the statute involve questions of law that must be reviewed on a *de novo* basis with no deference given to the special master's interpretation. Respondent contends that the court is obliged to give deference to the special master's interpretation of the statute and overturn that interpretation only where the error is "unmistakably clear." There is support in the precedent of this court for both approaches. *See Gamalski v. Secretary, HHS,* 21 Cl.Ct. 450, 453 (1990) (refusing to grant deference), and *Stotts v. Secretary, HHS,* 23 Cl.Ct. 352, 360–66 (1991), and *Munn v. Secretary, HHS,* 21 Cl.Ct. 345, 348 (1990) (granting deference). The court need not resolve this dispute, however, because for the reasons set forth herein, the special master's interpretation, in pertinent part, is clearly incorrect and therefore should not be followed under either standard.

The court notes, however, that a rule obliging this court to overrule statutory interpretations by a special master only when an error is "unmistakably clear" could produce anomalous and apparently unintended results. There is no provision in the Vaccine Act that makes a special master's interpretation of the Vaccine Act binding on any other special master. In fact, on occasion, special masters have interpreted a single statutory provision in different, inconsistent ways. Where this occurs, and where the statutory provision is somewhat ambiguous, it may not be "unmistakably clear" that either interpretation is wrong. Thus, if respondent's proposed standard for Claims Court review were applied to such cases, the Claims Court, and apparently all reviewing courts including the Supreme Court, would be bound to uphold each of the two inconsistent decisions. Hence, under re-

spondent's proposed standard, the requirements of the Vaccine Act would not be uniform for all petitioners, and the outcome of a particular case could depend exclusively on the special master to which it is assigned.

5. Contrary to petitioner's contention, it is at least plausible that Congress would have intended to bar petitions seeking compensation for injuries to vaccine recipients simply because a parent of the injured recipient had received a damage settlement covering the parent's own damages. Congress enacted the Vaccine Act, Pub.L. No. 99–660, 100 Stat. 3756 (1986), on November 14, 1986, but the compensation provisions of the Act were not effective until October 1, 1988. Pub.L. No. 99–660, Title III, § 323(a); Pub.L. No. 100–203, § 4302, 101 Stat. 1330–221 (1987). Thus, there was an approximate two-year gap between the passage of the Act and its effective date. During that gap, it reasonably could be anticipated that each plaintiff in vaccine-related civil damage litigation would consider the effect of any settlement of the damage case on the vaccine recipient's ability to bring suit under the Vaccine Act, and would attempt to settle the litigation in such a manner as not to bar the vaccine-injured party from later collecting compensation under the Vaccine Act. Absent a provision such as Section 11(a)(7), civil action plaintiffs may have been able to accomplish what in effect would have amounted to a double recovery for vaccine-related injuries by settling damage actions brought by both the parent and the vaccine-injured child through an agreement that, in effect, included payments directed toward and in compromise of the child's injuries, but was structured in such a way that all monetary compensation was paid to the parent. A vaccine administrator or manufacturer who was the defendant in such civil litigation likely would not object to a settlement

ty discussed this legislative history in its briefs. Since the court concludes that dismissal of the petition is warranted on the separate ground that Janet Riehs "previously collected a[] ... settlement," the court will simply affirm the special master's decision and not ask for additional briefs discussing the legislative history of Section 11(a)(7).

### Conclusion

For the reasons set forth above, the special master's March 6, 1992, decision is affirmed and the Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.

structured in this way. The administrator or manufacturer ordinarily would be concerned only with its total cost to settle the litigation with all parties, including the injured vaccine recipient, and not with the allocation of the damages among the plaintiffs. Thus, it is at least plausible that Congress would have intended Section 11(a)(7) to preclude petitions where the parents previously had secured a damage award in a joint action with the injured child. In addition, interpreting Section 11(a)(7) to bar recovery on a petition where a co-plaintiff parent received a damage settlement in a prior civil action but the vaccine-injured child did not, would also be consistent with the general rule of statutory interpretation that statutes should be interpreted in such a way as to give meaning to each distinct statutory provisions. *Astoria Federal Savings and Loan Ass'n v. Solimino*, —— U.S. ——, ——, 111 S.Ct. 2166, 2168, 115 L.Ed.2d 96 (1991). If, as petitioner suggests, Section 11(a)(7) creates a bar only where the prior civil action resulted in damages being awarded directly to the vaccine-injured person, Section 11(a)(7) would seem redundant in that it would not bar recovery on a petition on which recovery was not already barred under Sections 13(a)(1)(A) and 11(b)(1)(A).