$$\frac{\$1.85}{\$1.00} \times (\$775,312.71) \times \left(1 + \frac{0.0393 \times n}{365}\right)$$

Costs to plaintiff.

**Jan Paul BENEDICT, Conservator of the Estate of Bryan Matthew Totterdale, a Minor, Petitioner,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–2148V.

United States Court of Federal Claims.

Sept. 30, 1993.

Richard L. Steinberg, Detroit, MI, for petitioner.

Linda S. Renzi, Washington, DC, with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, Helene M. Goldberg, Director, Torts Branch, Civ.Div., and John Lodge Euler, Deputy Director, for respondent.

## OPINION

ROBINSON, Judge.

On October 1, 1990, petitioner filed a request for compensation in the Court of Federal Claims [1] under the National Childhood Vaccine Act, (the "Vaccine Act" or the "Act"),[2] 42 U.S.C. §§ 300aa–1 to –34 (1988), *amended by* several public laws (codified as amended at 42 U.S.C.A. §§ 300aa–1 to –34 (West Supp.1993)), for the allegedly vaccine-related injury of Bryan Matthew Totterdale. On April 13, 1993, Special Master Richard B. Abell dismissed the petition for lack of jurisdiction pursuant to § 11(a)(6) of the Vaccine Act, concluding that the petitioner was precluded from filing such petition under the Act because a civil action had already been filed on behalf of Bryan Matthew Totterdale after November 15, 1988, for injuries related to his vaccination which was administered before November 15, 1988. *Benedict v. Secretary of HHS*, No. 90–2148V, 1993 WL 131368 (Fed.Cl.Spec.Mstr. Apr. 13, 1993). This matter is before the court on petitioner's motion for review of the special master's decision. Oral argument on this motion

---

1. The United States Claim Court was renamed as the Court of Federal Claims on October 29, 1992. *See* the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516.

2. Individual sections of the Act will be cited herein without reference to 42 U.S.C. § 300aa.

was deemed not necessary in view of the adequacy of the briefs.

After a review of the record and for the following reasons, the court affirms the special master's decision.

### Background

Bryan Matthew Totterdale ("Bryan") received DPT[3] vaccinations on July 23, 1987, and September 10, 1987, and subsequently suffered a residual seizure disorder and an encephalopathy. On July 24, 1989, Jennifer and Thomas Totterdale, Bryan's parents, filed suit in the Circuit Court of Ohio County, West Virginia, against, among others, Hsin Hong Wang, the physician who administered the DPT vaccine and Lederle Laboratories, a distributor and manufacturer of the vaccine. The complaint sought compensation for Bryan's vaccine related injuries, and for Bryan's parents' losses. This action was dismissed without prejudice on September 26, 1990.

On October 1, 1990, petitioner, Jan Paul Benedict, the Conservator of the Estate of Bryan Matthew Totterdale, filed a request for compensation under the National Childhood Vaccine Injury Act, for the allegedly vaccine-related injury of Bryan Matthew Totterdale. Petitioner claimed Bryan's residual seizure disorder and encephalopathy were a direct result of the DPT vaccination. Respondent, Secretary of the Department of Health and Human Services, filed a report conceding the existence of vaccine-related injuries and recommending compensation in the event that all other requirements of the National Vaccine Injury Compensation Program were fulfilled.

On July 24, 1992, Special Master Richard B. Abell, *sua sponte,* raised the question of whether petitioner was precluded from filing a petition for compensation under the Vaccine Act by the statutory bar of § 11(a)(6). Section 11(a)(6) provides:

If a person brings a civil action after November, 15, 1988 for damages for a vaccine-related injury or death associated with the administration of a vaccine before November 15, 1988, such person

may not file a petition under subsection (b) of this section for such injury or death.

The court ordered the parties to submit briefs on the issue of whether the petition should be dismissed under § 11(a)(6). On April 13, 1993, the special master dismissed the petition. Based on the record, the special master found that the action filed by Bryan's parents on July 24, 1989, subsequent to the statutory deadline, was a civil action claiming damages for vaccine-related injuries on behalf of Bryan Matthew Totterdale associated with a vaccine administered prior to November 15, 1988, and that Bryan was represented by his parents in that action. The special master further concluded that dismissal of the petition was in accordance with Congressional intent and the Office of Special Masters lacked authority to act otherwise.

### Contentions of the Parties

On May 13, 1993, petitioner submitted a motion for review of the special master's dismissal order. Petitioner maintains that no civil action was brought and filed by Bryan Matthew Totterdale which would act as a bar, and the complaint filed by Bryan's parents should not be recognized by the court as such an action. Plaintiff reasons that Bryan, himself, did not bring a civil action for vaccine-related injuries before November 15, 1988, and that no civil action representing Bryan's interest was ever effectively commenced. Next petitioner argues that the Congressional intent behind the Vaccine Act is subverted by the special master's dismissal of the claim. Finally petitioner contends that dismissal of the petition violates the due process clause of the Fifth Amendment of the United States Constitution.

Respondent counters that the special master correctly dismissed the petitioner's claim pursuant to § 11(a)(6), in that the previous action commenced by Bryan's parents falls within the ambit of the civil actions which trigger § 11(a)(6). Respondent further contends that such dismissal was

---

**3.** Diptheria-pertussis-tetanus.

intended by Congress and that § 11(a)(6), as applied, does not violate the due process clause.

## DISCUSSION

Under the Vaccine Act the United States Court of Federal Claims has jurisdiction to review the decision of a special master. Under the amended Act, the court may either uphold, remand, or set aside the findings of fact of conclusions of law of a special master. Section 12(e)(2). However, the court may upset such findings and conclusions only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. ... [The court may then] issue its own findings of facts and conclusions of law." Section 12(e)(2)(B). "Thus, the [Court of Federal Claims] judge reviews the special master's decision essentially for legal error or factual arbitrariness." *Bradley v. Secretary of HHS*, 991 F.2d 1570, 1574 (Fed.Cir.1993).

In *Hines ex rel. Sevier v. Secretary of HHS*, 940 F.2d 1518 (Fed.Cir.1991), the United States Court of Appeals for the Federal Circuit discussed the arbitrary and capricious standard at length, but declined to adopt an exact formulation of the standard for the vaccine cases. *Id.* at 1528. It remarked, however, that regardless of the precise definition, " 'arbitrary and capricious' is a highly deferential standard of review." *Id.* The court explained that "[i]f the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Id.* After carefully considering the parties' contentions and the special master's decision, this court cannot say that the prior decision was arbitrary, capricious, or an abuse of discretion; indeed, this court finds the special master's decision in accordance with the law.

## I.

Petitioner maintains that no prior civil action for damages has been brought by Bryan Totterdale or has effectively represented his interests, and the complaint filed by Bryan's parents should not be treated as such. Particularly, petitioner argues that since he did not bring the earlier civil action, the statutory bar of § 11(a)(6) should not be invoked. In other words, petitioner argues that § 11(a)(6) requires an identity of petitioners. Alternatively, even if § 11(a)(6) does not require an identity of petitioners, petitioner contends that a prior action was never effectively commenced to the benefit of Bryan for his injuries and, thus, § 11(a)(6) is inapplicable.

The special master concluded that the complaint filed in the West Virginia circuit court by Bryan's parents triggered application of § 11(a)(6). Specifically, the special master interpreted § 11(a)(6) to bar a petition if the same interest was represented in an earlier civil action, rather than interpreting the Act to require the same representative be named in both actions. In the instant, case Special Master Abell determined that Bryan's interests were represented in the earlier action.

■ *A.* Petitioner argues that § 11(a)(6) requires an identity of parties rather than an identity of interests. Petitioner relies on the language in § 11(a)(6) providing that "[i]f a *person* brings a civil action ... such *person* may not file a petition" to argue that because the civil action was brought by Bryan's parents rather than the petitioner, conservator of Bryan's estate, petitioner is not precluded from filing a petition. Section 11(a)(6) (emphasis added). In other words, petitioner argues that he is not "such person" within the meaning of § 11(a)(6).

Special Master Abell correctly rejected this argument, finding that § 11(a)(6) only requires that Bryan's interests were represented in both the earlier civil action and the petition, and that the identity of the person representing such interest is irrelevant. In support, the special master referred to *Massing v. Secretary of HHS*, 19 Cl.Ct. 511 (1990), involving a similar section of the Act, § 11(a)(7),[4] wherein the court

---

**4.** Section § 11(a)(7) provides "If in a civil action      brought against a vaccine administrator or man-

looked past the identity of the petitioner to the interest represented. The court determined that a vaccine-injured deceased child's estate had received at least part of the value of a settlement of an earlier state civil action, and that a petition, thus, could not be filed on the child's behalf.

Petitioner argues that all cases which invoked § 11(a)(6) involved identical parties. However, petitioner can point to no case in which the court has rejected an identity of interests requirement in favor of an identity of petitioners requirement. Indeed petitioner concedes that in *Head v. Secretary of HHS*, 26 Cl.Ct. 546 (1992), the court again considered the identity of interests issue in conjunction with § 11(a)(7). The court in *Head* stated that "in applying Section 11(a)(7), instead of focusing on the identity of the legal representative, 'the person who brought [the] action' should be interpreted to refer to the person who suffered the vaccine related injury or death." *Id.* at 550. Petitioner argues, however, that such language in *Head* is dicta and should be ignored because the court affirmed the dismissal of the petition on other grounds. While the petitioner is correct that the court's reasoning in this regard was not necessary to the outcome of that case, it is sound and persuasive. The court looked to § 11(a)(9) of the Act which states that § 11(a) applies only "to a person who has sustained a vaccine-related injury or death and who is qualified to file a petition." *Id.* at 550–51. "[T]he fact that different 'persons' brought the instant petition and collected damages in the prior civil action does not necessarily mean that the Section 11(a)(7) bar does not apply." *Id.* at 551.

Similarly, in the instant case, this court should apply the § 11(a)(6) bar even though the petition and the civil action were filed by different persons. To hold otherwise would render § 11(a)(6) meaningless, as it could be easily circumvented simply by supplying a different representative in each case for an injured person.

■ *B.* Petitioner further contends that even if the court looks at identity of interests rather than identity of parties, § 11(a)(6) does not apply because Bryan's interests were not represented in the earlier civil litigation. Specifically, petitioner contends numerous times in slightly varying forms, that no civil action for damages was ever effectively commenced because Bryan was not named in the body of the complaint. Along the same lines, petitioner also contends that the complaint fails to pray for Bryan's damages and, thus, is fatally flawed as to him.

A careful review of the complaint in question reveals these arguments to be specious and without merit. The complaint filed by Bryan's parents is replete with statements describing damages to Bryan. For example, the complaint alleges:

> Bryan Totterdale sustained a severe reaction to the DPT vaccine administered by Defendant ...

> Defendant's acts and omissions ... were a proximate cause of Bryan Totterdale's ... injuries and damages ...

> As a result of Defendant's acts and omissions, Bryan Totterdale ... will in the future require medical, surgical, hospital, nursing, rehabilitative, physical therapy, occupational therapy, education, vocational therapy and custodial care and expenses ...

> Bryan Totterdale has suffered and will in the future suffer mental and physical anguish and pain, loss of enjoyment of life, humiliation, embarrassment, loss of earnings, and earning capacity and disability

> .    .    .    .    .

> Jennifer Totterdale and Thomas Totterdale have suffered and will continue to suffer ... along with the past and future medical, surgical, hospital, nursing, rehabilitative, physical therapy, occupational therapy, education, vocational therapy and custodial care and expenses.

ufacturer for a vaccine-related injury or death damages are awarded under a judgment of a court or a settlement of such action, the person

who brought such action may not file a petition under subsection (b) for such injury or death."

*See* Petitioners Motion for Review, appendix at paragraphs 12, 16, 17, 18, 19. Thus, petitioner's contention that Bryan is not mentioned in the complaint is simply not true. Moreover, these recitations are not "merely descriptive of the extent of the loss of services and the loss of consortium experienced by [Bryan's] parents" as argued by petitioners. *See* Petitioners Motion for Review at 8. Rather, the complaint clearly alleges specific damages suffered by Bryan, expenses incurred by Bryan, and alleges future expense and loss of earnings expected to be suffered by Bryan. It is similarly clear that the complaint's prayer for relief which recites "[p]laintiffs pray for judgement against each Defendant in an amount in which they are found to be entitled" includes a prayer for recovery of those damages relating to Bryan's injuries. Thus, Bryan's interests were represented in the prior action; he was mentioned throughout the body of the complaint as well as in the case caption;[5] and compensation for Bryan's damages were sought.

■ As the special master discussed in his decision, commencement of a civil action in West Virginia "simply requires a pleading setting forth a claim for relief to contain: '(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled. ... Further, '[e]ach averment of a pleading shall be simple, concise, and direct. No technical forms or pleading or motions are required.' " *Benedict*, slip op. at 4, quoting W.Va.R.C.P 8(a) and (e)(1). The complaint filed satisfies the liberal pleading rules of West Virginia. All that is required to trigger § 11(a)(6) is the filing of a complaint against an administrator or manufacturer. *See* H.R.Rep. No. 908, 99th Cong., 2d Sess. 14 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6287, 6344, 6355 (if a person injured by a vaccine administered before enactment of the Act "initiates a civil action against a manufacturer after the enactment of this legislation without first completing the compensation system, he or she may not enter the compensation system"); *Grieder v. Secretary of HHS*, No. 90–648V, slip op. at 2, 1991 WL 62120 (Cl.Ct.Spec.Mstr.April 5, 1991) (finding that § 11(a)(6) is invoked upon initiation of civil action); *Schumacher v. Secretary of HHS*, 2 F.3d 1128, 1135 (Fed.Cir.1993) (finding that § 11(a)(6) applies to civil actions against administrators and manufacturers). Bryan's interests were represented in the earlier action. Thus, the earlier civil action was effectively commenced as to Bryan.

■ Petitioner also argues that Bryan's parents were disqualified from representing Bryan's interest because they had a personal interest in the litigation by seeking damages in their own right, and that under West Virginia law a "next friend" cannot make an election to the detriment of a minor. Bryan's parents filed the earlier action on behalf of Bryan as "His Parents and Next Friends." As Special Master Abell noted in his decision, it is not necessary to determine whether or not petitioner's assertion in this regard is correct since Bryan's parents could sue in their capacity as guardian. *Benedict*, slip op. at 5–6. The complaint alleged the Totterdales were Bryan's parents and resided with him. A guardian may bring an action in a representative capacity. W.VA.R.C.P. 17(c). Bryan's parents, thus, had legal capacity to sue on his behalf and clearly chose to do so.

■ Petitioner's argument that a "next friend" can not make an election to the detriment of a minor, is equally unavailing. Even if petitioner's contention is otherwise correct, it is moot since Bryan's parents could sue in their representative capacity. Second, petitioner fails to demonstrate why § 11(a)(6) is inapplicable in this case. Peti-

---

**5.** As filed the caption of the complaint states "Bryan Totterdale, an Infant, Who Sues By and Through Jennifer Totterdale and Thomas Totterdale, His Parents and Next Friends." Petitioner makes much of legal authority supporting the proposition that the caption of an action is nothing more than a label. Indeed, petitioner contends that "if the statement is contained in the caption and unsupported in the body of the complaint, it is a nullity." Petitioner's Motion for Review at 7. This argument is of little moment in this case, however, since as described, the naming of Bryan in the caption is supported throughout the complaint.

tioner concedes "[t]hat a next friend may select the tribunal in which the suit is brought is clear ... [and that the next friend] may do nothing prejudicial to the rights of the minor, yet the mere selection of one out of many tribunals having jurisdiction cannot be considered as an act to the latter's prejudice." *In re Moore*, 209 U.S. 490, 496, 28 S.Ct. 585, 587, 52 L.Ed. 904 (1908). Significantly, however, petitioner then fails to explain how Bryan's parents' selection of a tribunal in this case is prejudicial to Bryan. Under § 11(a)(6), since Bryan's vaccination was administered before November 15, 1988, Bryan's parents had the option of selecting the forum in which to pursue an action on Bryan's behalf. Bryan's parents, whether as guardian or next friend, selected the forum in West Virginia. As the Supreme Court has stated, this is not an act to Bryan's prejudice.

## II.

■ Petitioner next argues that the special master's dismissal of the petitioner's instant claim undermines Congressional intent behind the Vaccine Act. Petitioner fails to recognize, however, that while the Vaccine Act may be a complex piece of legislation, "[w]hen a statute expresses its purpose in short, clear terms, the duty of the court is to apply the statute as written." *Amendola v. Secretary of HHS*, 989 F.2d 1180, 1182 (Fed.Cir.1993).

As the special master pointed out, § 11(a)(6) unambiguously prohibits the filing of a petition under this Act for injuries resulting from a pre-November 15, 1988 vaccination if a civil action was brought after November 15, 1988. This section is not in conflict with any other provisions of the Act. After determining that the requirements of § 11(a)(6) were met, as discussed above, Special Master Abell correctly dismissed the petition.

Further, the Special Master's dismissal is entirely consistent with the legislative intent behind the Vaccine Act. The Vaccine Act was enacted by Congress in response to the large number of law suits against

vaccine manufacturers seeking compensation for injuries related to the administration of childhood vaccines, and the impact these claims had on vaccine manufacturers resulting in their unwillingness to continue producing vaccines. *Amendola*, 989 F.2d at 1184. The motivating factor was to shield "manufacturers from exposure to liability [including litigation costs] resulting from the small ... incidence of unavoidable injury or death from widespread use of the vaccine[s]." *Id.* at 1186.

For persons whose injury or death was caused by a vaccine administered after November 15, 1988, filing of a civil action for vaccine-related damages is barred unless the claimant first files with the Court of Federal Claims under the Act.[6] More succinctly, persons alleging vaccine-related injuries are required to allow the court to consider their claim before resorting to traditional civil remedies and cannot bring civil actions until proceedings under the Act have been exhausted. Section 11(a)(2). However, for those persons, such as Bryan, who were injured by a vaccine administered before November 15, 1988, the Act allows the claimant the choice to either pursue a civil action or pursue compensation through the Court of Federal Claims and the no-fault Vaccine Injury Compensation Program. Section 11(a)(6). Any person who files a civil action after November 15, 1988, for an injury allegedly resulting from a vaccine administered prior to that date has elected his or her remedy forum.

The legislative history demonstrates that § 11(a) was intended to provide this election of remedies. The House Report recites that a person injured prior to enactment of the Act who elects to initiate a civil action against a manufacturer after enactment of the Act may not enter the compensation system. H.R.Rep. No. 908, 99th Cong., 2d Sess. 14 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6355. The Act, as a whole, provides a strong bias in favor of bypassing the civil litigation route in favor of compensation claims filed under the Act, and discourages litigation prior to pursuing

**6.** Except for civil actions for $1,000 or less. *See* § 11(a)(2)(A).

the compensation remedy. *Amendola*, 989 F.2d at 1184.

Thus, even assuming that the earlier civil action was dismissed before substantial expenses were incurred as petitioner claims, legislative intent is not thwarted by a dismissal of the petition. Compensation for Bryan's vaccine-related injuries could have been pursued either civilly or through the no-fault procedure provided by the Act. Having pursued a civil remedy, an election was made, and the route under the Act is now foreclosed.

### III.

■ Finally, petitioner contends that the special master's dismissal of petitioner's claim has a "constitutional dimension." Specifically, petitioner claims the special master's order violates the due process clause of the Fifth Amendment.

■ The court agrees with petitioner that the guaranty of due process applies to the judicial branch as well as the legislative, executive, and administrative branches of government. *Brinkerhoff–Faris Trust & Savs. Co. v. Hill*, 281 U.S. 673, 680, 50 S.Ct. 451, 454, 74 L.Ed. 1107 (1930). However, the court finds that no due process rights have been violated. Petitioner's only contentions are that the constitutional principles of the Fifth Amendment apply to the instant case, and that "permitting petitioner an opportunity to enforce a claim before this tribunal is consistent with the decisions announced by the United States Court of Federal Claims in *Goodwin v. Secretary of D.H.H.S.*, 27 Fed.Cl. 1 (1992), and *Goodwin v. Secretary of D.H.H.S.*, 27 Fed.Cl. 374 (1992) (on reconsideration)." Petitioner's Motion for Review at 3. However, no constitutional argument was discussed in either *Goodwin* decision.

■ "[T]here is no general fundamental right of access to courts." *Gronne v. Abrams*, 793 F.2d 74, 78 (2d Cir.1986). Rather, due process merely " 'assures that no person will be denied an opportunity to present judiciary allegations concerning violations of fundamental constitutional rights.' " *Id.* quoting *Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974). Once access to the courts has been made a right or a necessity, the government may not deprive anyone of access unless the government interest outweighs the private interest. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 n. 5, 102 S.Ct. 1148, 1155 n. 5, 71 L.Ed.2d 265 (1982). An impediment created by the government which prevents access to its courts necessary to protect a fundamental interest is denial of due process if the courts represent the exclusive source of that protection. *American Civil Liberties Union, Inc. v. Mabus*, 719 F.Supp. 1345, 1358 (S.D.Miss.1989); *United States v. Kras*, 409 U.S. 434, 443–46, 93 S.Ct. 631, 637–39, 34 L.Ed.2d 626 (1973). In the instant case, however, this court is not the exclusive forum available to petitioner. Because Bryan received his vaccinations before November 15, 1988, Bryan's representative had the choice of filing either a civil claim or a claim under the Vaccine Act. For persons injured by vaccines before November 15, 1988, the Act allows an alternative means for compensation. By filing a complaint in the State of West Virginia, the Totterdales elected to pursue a civil action, and foreclosed their opportunity to seek compensation under the Act. Thus, there has been no violation of due process.

### CONCLUSION

■ Although the court may sympathize with Bryan's position in which he is being denied a remedy for failing to comply with what may seem to be a technicality, and although the result may seem harsh, the court may not undo the language crafted by Congress, or overrule a decision of the special master that is clear and consistent with that language. Moreover, this court agrees with Special Master Abell that this jurisdictional bar is so apparent that there was no reasonable basis for bringing the petition. *Benedict*, slip op. at 7. Indeed, this motion for review borders on the frivolous.

The court finds the special master's decision was not arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law. Therefore, the court denies petitioner's motion for review, and sustains the special master's April 13, 1993 order dismissing petitioner's claim. The Clerk of the Court is directed to enter judgment accordingly.