**Berta SALCEDA, as the legal representative of her daughter, Maria Isabel Salceda, Petitioner,**

**v.**

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–1304V.

United States Court of Federal Claims.

Decided Jan. 6, 1994.

---

Goldberg, Director, and Gerard W. Fischer, Asst. Director, Washington, DC, for respondent.

*ORDER*

ANDEWELT, Judge.

### I.

In this action, petitioner, Berta Salceda, seeks compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–10 to –34 (the Vaccine Act), for injuries allegedly suffered by her daughter, Maria Isabel Salceda (Maria), as a result of a DPT (diphtheria, pertussis, and tetanus) vaccination administered in July of 1982 and a DT vaccination administered on October 7, 1982. In a July 15, 1993, decision on remand, the special master dismissed the petition with prejudice on the ground that the filing of the petition was barred by Section 11(a)(5)(B) of the Vaccine Act. Section 11(a)(5)(B) provides: "If a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such person may not file a petition under subsection (b) of this section [seeking compensation] for such injury or death." The "pending ... civil action" upon which the special master relied in dismissing the petition was a California Superior Court action filed against Kaiser Foundation Health Plan, Inc. (Kaiser) and others. The California complaint listed as plaintiffs Maria's parents, Berta and Elias Salceda, each suing for their own personal damages, and Maria suing "by and through her Guardian Ad Litem, Elias Salceda."

Kaiser, a health maintenance organization, had administered the DPT and DT vaccines to Maria and, in addition, had provided care to Maria following her apparent reaction to the vaccines. Although the California action originally attacked both Kaiser's administration of the vaccines and its post-vaccination care, the claim based on the administration of the vaccines was dismissed prior to the filing of the instant petition. In her decision on remand, the special master concluded that the Section 11(a)(5)(B) bar nevertheless applies to the instant petition. The special master cited *Matos v. Secretary, HHS*, No. 90–690V, 1993 WL 160033 (Ct.Fed.Cl. May 4,

David P. Dibble, Eureka, CA, for petitioner.

Mark Curtis Raby, with whom were Asst. Atty. Gen. Frank W. Hunger, Helene M.

1993), for the proposition that injuries that result from a failure to treat properly "vaccine-related injur[ies]" themselves constitute "vaccine-related injur[ies]" and, therefore, an action attacking only medical care subsequent to vaccine administration can constitute a disqualifying suit under Section 11(a)(5)(B).

## II.

◼ Subsequent to the special master's decision on remand, the Court of Appeals for the Federal Circuit, in *Schumacher v. Secretary, HHS,* 2 F.3d 1128 (Fed.Cir.1993), interpreted Section 11(a)(5)(B) in a manner inconsistent with *Matos.* In *Schumacher,* the Federal Circuit recognized that there was no specific statement in Section 11(a)(5)(B) to the effect that the bar contained therein applies only where the "pending ... civil action for damages" is brought against a certain class of defendants. After reviewing the other provisions of the Vaccine Act and the pertinent legislative history, however, the court interpreted Section 11(a)(5)(B) to bar the filing of a petition under the Vaccine Act only when the pending civil action for vaccine-related injuries is an action against either the vaccine administrator or the vaccine manufacturer. *Id.* at 1134. In *Matos,* the pending civil action held to preclude the filing of a Vaccine Act petition was not brought against the manufacturer or administrator of the vaccine but rather against a health provider involved exclusively in the post-vaccination care of the vaccine recipient.

By rendering *Matos* unsound precedent, *Schumacher* eroded the precedential underpinning of the special master's decision on remand in this action. A rejection of the *Matos* decision, however, is not necessarily determinative of the instant action. In this action, like *Matos,* the "pending ... civil action" under scrutiny involves post-vaccination care. But herein, unlike *Matos,* the entity sued for improper post-vaccination care happened to be the same entity that administered the vaccines. The question therefore becomes whether the Section 11(a)(5)(B) bar, which *Schumacher* interpreted to apply only when the pending suit for vaccine-related injuries is brought against the vaccine administrator or manufacturer, applies only when the pending suit is brought against the administrator or manufacturer for actions taken in its capacity as such. Or, in the alternative, does the bar also apply when the allegations in the pending suit are brought against such an entity for actions taken in a capacity other than that of administrator or manufacturer, such as the providing of post-vaccination patient care.

Respondent argues that the Section 11(a)(5)(B) bar applies whenever the pending civil action for vaccine-related injuries is against the entity that administered or manufactured the vaccine, even when the action does not challenge the administration or manufacture of the vaccine. Thus, in effect, respondent takes the position that Congress intended suits for negligent post-vaccination care brought against the administrator or manufacturer of a vaccine to be treated differently than similar negligence suits brought against other health care providers. But respondent has not presented a convincing reason why Congress would have chosen to create such apparent asymmetry in the law. Respondent contends that in so doing, Congress wanted to encourage resort to the Vaccine Act first, rather than to traditional tort litigation. But if Congress wanted to postpone tort litigation with respect to alleged negligence in post-vaccination care until after a determination of compensation is made under the Vaccine Act, it is not apparent why Congress would not have postponed such suits uniformly, without excepting suits against health care providers that were neither the manufacturer nor administrator of the vaccine.

To determine whether Congress intended to create such apparent asymmetry in the law, a detailed analysis would seem necessary of the related provisions of the Vaccine Act and the pertinent legislative history, similar to the analysis carried out in *Schumacher*.[1] Neither party, however, has presented

---

1. Such a determination possibly could turn upon an analysis of the types of suits Congress has barred if a petitioner elects to accept an award under the Vaccine Act. *See* Section 21. If Congress intended an acceptance of a Vaccine Act award to bar a certain type of suit, it would seem

such an analysis. Moreover, the special master did not have an opportunity to offer her expertise on this issue because it was not until after the special master had issued her decision on remand that the *Schumacher* court held that Section 11(a)(5)(B) applies only when a suit is brought against the vaccine administrator or manufacturer. Without appropriate additional input from the parties and the special master, this court is hesitant to reach any final conclusions as to the proper interpretation of Section 11(a)(5)(B). Therefore, the court will remand this action for consideration of this issue by the special master.

### III.

Respondent argues before this court that even if dismissal were not warranted under Section 11(a)(5)(B), dismissal would be warranted under Section 11(a)(6). Section 11(a)(6) provides: "If a person brings a civil action after November 15, 1988, for damages for a vaccine-related injury or death associated with the administration of a vaccine before November 15, 1988, such person may not file a petition under subsection (b) of this section [seeking compensation] for such injury or death." The special master did not consider Section 11(a)(6) in her decision on remand. Because this court has already decided to remand this action, it seems appropriate for the special master also to consider on remand this alternative alleged ground for dismissal.

With respect to Section 11(a)(6), the court offers the following observations.

First, the California Superior Court action herein would seem to satisfy the two pertinent timing requirements for a Section 11(a)(6) bar to apply—the DPT and DT vaccines were administered in 1982, before November 15, 1988, and the California complaint was filed on March 23, 1990, after November 15, 1988.

Second, the California complaint as originally filed named Connaught Laboratories, Inc. (Connaught), the manufacturer of the DPT vaccine, as a defendant and sought damages for Connaught having placed into commerce the vaccine that proximately caused Maria's injuries. Such damage allegations would seem to fall within the scope of Section 11(a)(6) in that they seek "damages for a vaccine-related injury or death associated with the administration of a vaccine." [2]

Third, the remaining requirement for the Section 11(a)(6) bar to apply is that the same "person" both brought the California action and filed the instant petition. The California complaint, as filed, identifies Maria as a plaintiff, "by and through her Guardian Ad Litem, Elias Salceda." The instant petition identifies petitioner as Berta Salceda, as Maria's legal representative. The fact that different legal representatives brought the two actions seeking compensation for Maria does not mean that different "persons" filed the two actions for purposes of applying Section 11(a)(6). The focus of Section 11(a)(6) is on the "person" who sustained the vaccine-related injury or death and not on the individual who happens to represent the interests of that person in the litigation. Section 11(a)(9); *Benedict v. Secretary, HHS*, 29 Fed.Cl. 587, 591 (1993); *Head v. Secretary, HHS*, 26 Cl.Ct. 546, 550 (1992), *aff'd*, 996 F.2d 318 (Fed.Cir.1993).

The parties do not dispute that the instant action was "brought" by Maria, but a dispute does exist with respect to the California action. Petitioner acknowledges that the California action was filed after November 15, 1988, and listed Maria as a plaintiff, but petitioner makes a series of arguments as to why Maria should not be deemed to have brought that action. For example, petitioner contends that although Maria was listed as a plaintiff in the California action, Elias Salceda, through whom she allegedly appeared, was never formally appointed Maria's guard-

reasonable for Congress to preclude the filing of such a suit until after a compensation determination is made under the Vaccine Act.

**2.** Petitioner notes correctly that Connaught was dismissed as a defendant in the California action prior to the filing of the instant petition under the Vaccine Act. But unlike the bar in Section 11(a)(5)(B), the Section 11(a)(6) bar applies even if the civil action is not pending at the time the Vaccine Act petition is filed. It is sufficient under Section 11(a)(6) that the civil action was filed after November 15, 1988.

**320**

ian ad litem. California law requires that "a minor ... *shall* appear ... by a guardian ad litem *appointed* by the court in which the action or proceeding is pending." Cal.Civ. Pro. § 372 (emphasis added). In a related argument, petitioner cites *Berry v. Chaplin*, 74 Cal.App.2d 652, 169 P.2d 442 (1946), for the proposition that a guardian ad litem, even if properly appointed, cannot act in California courts in a manner that surrenders any material right of a minor. Petitioner argues, therefore, that even a properly appointed guardian ad litem could not bind Maria by bringing a suit that would result in Maria surrendering her material right to proceed under the Vaccine Act.

In her decision on remand, the special master considered the question of Elias Salceda's capacity to represent Maria in the California action in connection with the Section 11(a)(5)(B) bar, but the special master did not discuss Section 11(a)(6) and hence did not evaluate the issue specifically with respect to the wording of Section 11(a)(6). Moreover, petitioner apparently has modified her legal argument somewhat and the special master should have the opportunity to consider petitioner's argument in its evolved form. In addition, in her decision on remand, the special master noted that Berta Salceda was appointed Maria's guardian ad litem in the California action on September 17, 1990, three days before Connaught was dismissed as a defendant in that action. It is not clear whether by so noting the special master was concluding that even if Elias Salceda was not a proper guardian ad litem, the California action against Connaught should be deemed to have been brought by Maria because Maria was represented in that action by a properly appointed guardian ad litem for these three days. In response to such an argument, petitioner appears to contend that because Berta Salceda sought dismissal of the action against Connaught almost immediately after being appointed guardian ad litem, it is not appropriate to conclude that a properly appointed guardian ad litem for Maria had ever brought the action against Connaught.

*Conclusion*

For the reasons set forth above, the court remands this action for further consideration by the special master. On or before April 6, 1994, the special master shall file a response to this order in which she shall (1) reconsider her dismissal of the petition under Section 11(a)(5)(B) based on *Schumacher*, and (2) consider for the first time respondent's argument presented to this court that dismissal is appropriate under Section 11(a)(6).

**IT IS SO ORDERED.**