Sarah Janell BROWN, by Her Parents and
Next Friends, Willie Fred BROWN and
Doris Nell Brown, Petitioners,

v.

SECRETARY OF the DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, Respondent.

No. 90–3381V.

United States Court of Federal Claims.

Dec. 19, 1995.

Donna S. Cummings, New Orleans, Louisiana, for petitioners.

Althea E. Walker, Washington, D.C., with whom was Assistant Attorney General Frank W. Hunger, for respondent.

## OPINION

MEROW, Judge.

### Introduction

This matter comes before the Court on Petitioners' Motion for Review of Special Master Elizabeth E. Wright's June 30, 1995 order dismissing their petition for compensation under § 300aa–11(a)(6) of the National Vaccine Injury Compensation Act ("Vaccine Act" or "Act"), 42 U.S.C. § 300aa–10–34 (1988 & Supp. V 1993).[1] For the reasons set forth below, the special master's decision is affirmed.

### Background

Sarah Janell Brown, ("Sarah") received a DTP/polio vaccination on January 17, 1986. Pet. at ¶ 3, Ex. 2. In February, 1986, over a month after the administration of the vaccine, Sarah experienced episodes of "jerking and spitting up." Pet. at ¶ 3. Sarah was hospitalized, and subsequently diagnosed with seizure disorder. *Id.* at ¶ 4; Ex. 6.

Sarah's father, Willie Fred Brown, brought a civil action in Louisiana state court on May 25, 1990 against the physician who administered Sarah's DTP vaccine for injuries allegedly resulting from the immunization. Pet's Resp. to Show Cause Ord. at 1–2. On October 1, 1990, prior to the entry of judgment, Petitioners had their civil action dismissed. *Id.* at 2.

Sarah's parents ("Petitioners") brought the instant petition for compensation under the Vaccine Act on October 1, 1990, the very day of Petitioners' dismissal of the Louisiana civil action. Respondent moved to dismiss for lack of jurisdiction, alleging that Petitioners had failed to satisfy the requirements of § 11(a)(6). Special Master Wright found jurisdiction lacking and entered an order of dismissal on June 30, 1995. On July 31, 1995, Petitioners filed their motion for review

---

**1.** When discussed within the text, Vaccine Act sections will be referenced without the preceding title number or "300aa."

in the United States Court of Federal Claims.

### Discussion

■ The facts of this case are undisputed, therefore the Court only reviews the special master's legal conclusion that Petitioners are precluded from bringing their Vaccine Act petition for lack of jurisdiction under § 11(a)(6). This Court may set aside a special master's findings of fact and conclusions of law which are found to be "... arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa–12(e)(2). Each of these standards applies to a different aspect of a judgment—fact findings are reviewed under the "arbitrary and capricious" standard, legal questions under the "not in accordance with law" standard, and discretionary rulings under the "abuse of discretion" standard. *Munn v. Sec'y of DHHS,* 970 F.2d 863, 870 n. 2 (Fed.Cir.1992); *cf. Euken v. Sec'y of DHHS,* 34 F.3d 1045, 1047 (Fed.Cir. 1994) (not in accordance with law standard is a *de novo* standard of review).

■ In matters of statutory interpretation, the judiciary is required to carry out the will of the legislature by discerning, if possible, the legislative intent with respect to the issue presented. Under the traditional rule, courts must first look to intrinsic evidence of intent—the textual language alone. *E.g. Toibb v. Radloff,* 501 U.S. 157, 161–63, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991) *cited in Weddel v. Sec'y of HHS,* 23 F.3d 388, 391 (Fed.Cir.1994). To ascertain the import of one particular provision of a complex regulatory statute such as the Vaccine Act, a court must consider the text of the statute as a whole. *Amendola v. Sec'y of HHS,* 989 F.2d 1180, 1182 (Fed.Cir.1993). If upon review it is clear "what those words would mean in the mouth of a normal speaker of English, using them in the circumstances in which they were used," *Weddel,* 23 F.3d at 391 (*quoting* Oliver Wendell Holmes, The Theory of Legal Interpretation, 12 Harv.L.Rev. 417, 417–419 (1899)), this meaning must be enforced despite extrinsic evidence of a contrary intent. *Wisconsin R.R. Comm'n v. Chicago, Burlington & Quincy R.R.,* 257 U.S. 563, 589, 42 S.Ct. 232, 237–38, 66 L.Ed. 371 (1922), cited in *Weddel,* 23 F.3d at 391.

■ When construing unambiguous statutory text, courts may depart from plain language only in rare cases in which application of a statute produces a result that is not just harsh or troubling, but rather, when it is so "bizarre" that Congress could not be said to have intended it. *See Demarest v. Manspeaker,* 498 U.S. 184, 186, 190–91, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991) *cited in Weddel,* 23 F.3d at 391. In any case, to support a construction that is contrary to a statute's plain meaning, a litigant must set forth explicit legislative history to that effect. *Massing v. Sec'y of HHS,* 926 F.2d 1133, 1135 (Fed.Cir.1991) (utilizing this rule in analysis of Vaccine Act provision).

■ Further coloring the statutory construction in this matter is the basic rule that "[l]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957); *Schumacker v. Sec'y of HHS,* 2 F.3d 1128, 1135 n. 12 (Fed.Cir.1993) (sovereign immunity's constraints discussed in context of Vaccine Act review).

With these tools of construction in hand we turn to the Vaccine Act provision upon which the special master relied. Section 11(a)(6) provides:

> If a person brings a civil action after November 15, 1988 for damages for a vaccine-related injury or death associated with the administration of a vaccine before November 15, 1988, such person may not file a petition under subsection (b) [Vaccine Program] of this section for such injury or death.

42 U.S.C. § 300aa–11(a)(6). Special Master Wright determined that § 11(a)(6) barred Petitioners' claim because the injury at issue occurred in 1986 and Petitioners had filed a civil action in 1989 for damages related to the allegedly vaccine-related injury. The special master noted that Petitioners' civil action "clearly constitute[d] the type of civil action for damages contemplated by § 11(a)(6)," because it was an action for damages brought

against a vaccine administrator alleging that administration of the vaccine constituted a deviation from the standard of care. Order of Dismissal at 2.

In their motion for review, Petitioners challenge this finding on two bases. First, they assert that jurisdiction obtains under the Act because both of Sarah's parents brought the instant petition, while the prior civil action was filed solely under the name of "Willie Fred Brown," Sarah's father. They contend that § 11(a)(6) only precludes petitions which name the same "person" who served as the vaccine-injured individual's representative or guardian in the earlier civil case. Second, as an alternate basis for jurisdiction, Petitioners point out that they dismissed their civil action prior to a final disposition and, as such, never received compensation for Sarah's injury. Mot. for Review at 1–2. They assert that

> the "focus" of the Act's refusal to permit claims by those who have filed civil actions after November 15, 1988 is to prevent double recovery, so that persons who have recovered in a civil action will not deplete the funds available under the Act.

*Id.* at 3. Implicit in their argument is that the jurisdictional limitations established by § 11(a)(6) were not intended to leave parties—such as Petitioners—who err in making initial forum selections without any recourse whatsoever. *Id.* at 3.

■ A. Petitioners' first contention—that Sarah's mother's joining as a guardian in Sarah's petition somehow distinguishes the identity of the "person" who filed the civil action from that of the person filing the instant petition—lacks merit. The Court of Federal Claims has rejected similar arguments repeatedly. *See Salceda v. Sec'y of HHS,* 30 Fed.Cl. 316, 319 (1994), *on remand,* 33 Fed.Cl. 164, 165 (1995), *aff'd* No. 95–5078, slip op. at 2–3, 1995 WL 698893 (Fed.Cir. Nov. 28, 1995) (mother of injured child brought Vaccine Act petition, while both mother and father brought civil action as plaintiffs and applied for status as guardians ad litem); *Benedict v. Sec'y of HHS,* 29 Fed.Cl. 587, 590 (1993) (§ 11(a)(6) bar invoked when parents brought civil action and voked when parents brought civil action and conservator of child's estate brought Vaccine Act petition).

Vaccine Act § 11(a)(9) defines the term "person" with relation to the Act's jurisdictional provisions as the individual "who has sustained a vaccine-related injury or death." *Salceda,* 30 Fed.Cl. at 319. Thus, when interpreting § 11(a)(6), "the identity of the person representing the interest at hand is irrelevant." *Benedict,* 29 Fed.Cl. at 591. When parties file a civil suit subsequent to November 15, 1988 concerning the same individual as a Vaccine Act petition, the Act will bar the petition regardless of a lack of identity of persons representing such individual. *Id.* Accordingly, pursuant to the Vaccine Act, the person considered as filing the instant Vaccine Act petition as well as the earlier civil suit is Sarah, and not her mother or her father. Therefore, § 11(a)(6) precludes jurisdiction over the instant case in this regard.

■ B. In their second argument based upon the focus of the Act, Petitioners ask this Court to fulfill the Congressional goal of providing an opportunity for compensation to all vaccine-injured individuals—even if that requires bypassing the plain language of the text. Asserting that the intent of § 11(a)(6) was merely to prevent double recovery, Petitioners apparently contend that barring jurisdiction under this provision produces a bizarre result.

As stated above, the language of the text must be followed as long as it is not ambiguous. *Supra* at 665. Again, § 11(a)(6) states,

> If a person *brings* a civil action after November 15, 1988 for damages for a vaccine-related injury or death associated with the administration of a vaccine before November 15, 1988, such person *may not file* a petition under subsection (b) [Vaccine Program] of this section for such injury or death.

42 U.S.C. § 300aa–11(a)(6) (emphasis added). It has been held consistently that the text of § 11(a)(6) is clear. *See e.g. Salceda,* 33 Fed. Cl. at 166; *Lamb by Lamb v. Sec'y of HHS,* 24 Cl.Ct. 255, 257 (1991); *Joy v. Sec'y of HHS,* 1990 WL 299398 at 1–2 (Cl.Ct.

Spec.Mstr. Nov. 16, 1990). The wording of the provision is straightforward. Without qualifying language, the provision mandates that no one who "brings a civil action" may file a Vaccine Act petition. *Lamb*, 24 Cl.Ct. at 258 (generally accepted rule is that "filing" a complaint is equivalent to "bringing" or "commencing" an action). Use of the present tense of the verb "bring" excludes all petitioners who ever commence a civil action—either before or after filing a Vaccine Act petition. *See Salceda*, 30 Fed.Cl. at 319 n. 2; *but see Klahn v. Sec'y of HHS*, 31 Fed.Cl. 382 (1994) (petitioner who filed a civil action subsequent to filing a Vaccine Act petition was not jurisdictionally barred). Further, use of the sweeping command "may not file" precludes arguments that Congress intended that filing a Vaccine Act petition would be permitted under any condition after a post-November 15, 1988 civil action had been commenced.

Also, upon review of the other jurisdictional provisions of the Act, it becomes apparent that Congress intended to place various jurisdictional limitations within the compensation system. Section 11 of the statute divides possible petitioners into three classes: class (1) being those injured prior to November 15, 1988 who brought civil actions prior to that date; class (2) being those injured prior to November 15, 1988 who had not brought civil actions prior to that date (including Petitioners); and class (3) being those injured subsequent to November 15, 1988. Those in the first class enjoy the benefit of either dismissing their civil action (within two years) and proceeding under the Vaccine Act, or maintaining their civil action and foregoing Vaccine Act review. *See* 42 U.S.C. § 300aa–11(a)(5)(A). Those in the second class may either file a civil action or proceed under the Vaccine Act, but cannot do both. 42 U.S.C. § 300aa–11(a)(6). Petitioners in the third class are required by the statute to bring Vaccine Act petitions for recovery of "an amount greater than $1000

or in an unspecified amount" prior to entering the civil system. *See* 42 U.S.C. § 300aa–11(a)(2)(A). They have no option to elect to bring a civil action instead of a Vaccine Act petition.[2] *Id.*

The disparate treatment of the three classes is evident. Petitioners in the first and third classes are permitted to bring Vaccine Act proceedings subsequent to dismissal of a previous civil suit, whereas class two petitioners are denied this privilege.[3] *See Flowers v. Sec'y of HHS*, 49 F.3d 1558, 1562 (Fed.Cir.1995) (post–1988 injured petitioner improperly files civil suit and is allowed to refile Vaccine Act petition); *but see Salceda*, 30 Fed.Cl. at 319 n. 2. Petitioners in class two may elect to bring either a civil action or a Vaccine Act petition—but choosing the former precludes any possibility of ever bringing a Vaccine Act petition. *See Salceda*, 30 Fed.Cl at 319.

At first blush, the restriction placed upon class two petitioners may appear harsh as it provides no second chance for a petitioner who makes a hasty or ill-informed decision to bring a civil action either prior to or concurrently with a Vaccine Act petition. *See e.g. Lamb*, 24 Cl.Ct. at 258 (claimed incompetence of counsel resulted in petitioner being unaware of the availability of Vaccine Act relief at time of filing civil action). However, consideration of the statute in its entirety reveals that Congress intentionally and rationally placed this restriction upon class two petitioners.

Individuals in class one who had filed civil actions before November 15, 1988 had no option to pursue a remedy under the Vaccine Act when they filed their actions. With § 11(a)(5)(A) Congress provided them an opportunity to dismiss their civil suits and proceed under the Vaccine Act. In contrast, class two petitioners had not yet initiated their civil actions at the time Congress enacted the Act. With § 11(a)(6) Congress permitted these petitioners to proceed with civil actions as they would have in the statutory

---

2. Additionally, members of all three classes retain the right to commence civil actions subsequent to the conclusion of Vaccine Act review in the event they are unsatisfied with their recovery. *See* 42 U.S.C. § 300aa–21(a). Further, the Act provides a mechanism for tolling state statutes of

limitations during the pendency of Vaccine Act review. 42 U.S.C. § 300aa–16(c).

3. Again, members of the first class must also satisfy § 11(a)(5)(A).

environment extant on the date of injury, but pursuit of such actions would foreclose the possibility of a Vaccine Act action. *Greider v. Sec'y of HHS*, 23 Cl.Ct. 348, 351 (1991). By providing this disincentive to bringing prior civil actions, Congress encouraged class two petitioners to proceed first under the Act.[4] *Id.* With respect to class three individuals who were injured subsequent to the Act, Congress uncovered a clean slate and made initial Vaccine Act proceedings mandatory. When viewed in this way, the systematic and logical nature of the Act's jurisdictional provisions is manifest.

Additional evidence of Congressional intent to impose a jurisdictional choice restriction can be found in § 10(b) of the Vaccine Act. This provision provides:

(b) Attorney's obligation

It shall be the ethical obligation of any attorney who is consulted by an individual with respect to a vaccine-related injury or death to advise such individual that compensation may be available under the program for such injury or death.

42 U.S.C. § 300aa–10(b). This ethical disclosure requirement promotes the reaching of an informed choice with respect to the utilization of available Vaccine Act procedures so that jurisdictional missteps—such as those of Petitioners—will be averted.

Upon review and analysis, the import and application of the text of § 11(a)(6) to the instant situation is apparent when considered independently and in conjunction with the statute as a whole.

Finally, Petitioners assert that the motivation behind inclusion of § 11(a)(6) was to preclude "double recovery"—implying that the statute's plain language should be bypassed and the legislative history consulted. However, Petitioners have failed to set forth any legislative history supporting a departure from the statute's plain language. *See Massing*, 926 F.2d at 1133.

Contrary to Petitioners' assertion, the legislative history illustrates that a major, and perhaps the primary, Congressional concern was to discourage civil actions against manufacturers in an effort to ensure a continued vaccine supply. H.R.Rep. No. 908, 99th Cong., 2d Sess. 12–13 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6353–54; National Childhood Vaccine Injury Act of 1985: Hearing on S. 827 Before the Senate Committee on Labor and Human Resources, 99th Cong., 1st Sess. 20, (1985). In keeping with this goal, the legislative history contemplates a choice between filing a civil suit and a Vaccine Act petition and the accompanying risk of being barred outright from the Vaccine Act compensation system. The text of House of Representative Committee on Energy and Commerce's House Report 99–908, largely mimicking § 11(a)(6), indicates that if a person injured within eight years prior to the date of the Act "... initiates a civil action against a manufacturer after the enactment of this legislation without first completing the compensation system, he or she *may not enter* the compensation system." H.R.Rep. No. 908, 99th Cong., 2d Sess. 14 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6355 (emphasis added). Thus, an examination of the legislative history reveals a Congressional intent to bar petitions initiated subsequent to civil actions such as the one brought by Petitioner Willie Fred Brown.

### Conclusion

Upon review it is determined that the drafters of the Vaccine Act did not construct a system in which every single petitioner injured as a result of a pre-November 15, 1988 vaccination would be eligible for compensation. Petitioners fall squarely within the purview of § 11(a)(6) and therefore cannot obtain jurisdiction under the National Vaccine Compensation Program. As the special master correctly decided this matter, it is accordingly **ORDERED** that Petitioners' motion for review is **DENIED** and judgment shall be so entered. No costs.

---

**4.** This would be consistent with Congress' greater goal of discouraging civil litigation against

vaccine manufacturers. *See infra* at 668.