Barbara AMENDOLA and Warren Amendola, as parents and guardians of Christopher Amendola, Petitioners,

v.

SECRETARY, DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

No. 91–5144.

United States Court of Appeals, Federal Circuit.

March 24, 1993.

Frank Mitchell Corso, Frank Mitchell Corso, P.C., Westbury, NY, argued for petitioners. Of counsel were James Alfred Griffin and Sonia Crannage.

Jeffrica Jenkins Lee, Atty., Dept. of Justice, Washington, DC, argued for respondent. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen. and Barbara C. Biddle, Atty.

Before PLAGER, Circuit Judge, BENNETT, Senior Circuit Judge, and LOURIE, Circuit Judge.

PLAGER, Circuit Judge.

Pursuant to the provisions of the National Childhood Vaccine Injury Act of 1986,[1] the Amendolas filed a petition in the Court of Federal Claims [2] for compensation for an alleged vaccine-related injury to their son, Christopher. Since the vaccine was administered in 1978, the matter falls under the special rules provided in the Act for injuries which occur prior to the Act's effective date of October 1, 1988. The special master dismissed the petition on the grounds that certain provisions of the Act preclude compensation because the Amendolas had previously, although unsuccessfully, sued the doctor who had administered the vaccine, in a civil malpractice suit. The Court of Federal Claims upheld the dismissal. The Amendolas appeal the decision of that court; we read the statutes to preclude the petition, and affirm.

## BACKGROUND

Christopher Amendola received his DPT # 3 injection [3] on June 24, 1978, when he was about 6 months old. He had earlier received DPT # 1 on February 25 and March 24, and DPT # 2 on May 20. The inoculation was administered by Christopher's pediatrician. Within a few hours, Christopher had to be admitted to the hospital for treatment of anaphylaxis which resulted in encephalopathy.

In 1985 Barbara and Warren Amendola, as parents and guardians of Christopher Amendola, filed a civil action in the state court of New York against the doctor who administered the DPT vaccine. The complaint alleged that the doctor was negligent and committed malpractice by administering the # 3 injection in spite of the negative reactions apparently caused by the # 2 injection. The doctor denied having been told of the negative reactions before he administered # 3. The case was tried to a jury, and was decided in favor of the doctor in the summer of 1989. In due course the judgment became final.

On August 14, 1990, the Amendolas filed a petition for compensation under the National Childhood Vaccine Injury Act of 1986. Respondent Secretary, Department of Health and Human Services (HHS) moved to dismiss the petition "because a pre-existing civil action for the same injury or condition that is the subject of the instant petition was allowed to go to judgment after the effective date of the Act. *See* 42 U.S.C.A. § 300aa–11(a)(5)(A) (West Supp.1990)."

Following submission of the Amendolas' opposition, the special master granted the motion to dismiss. *Amendola v. Secretary of the Dep't of Health and Human Servs.*, No. 90–766V, 1991 WL 43027 (Cl.Ct. March 14, 1991) (*Amendola/special master*). The special master concluded that: "A malpractice action against the doctor who administered DPT vaccine falls within [the scope of 42 U.S.C. § 300aa–33(5).] The injuries the plaintiffs sought to be compensated for in the prior civil action are the same injuries they seek compensation for here. The purpose of the Act was to provide an alternative to the tort system in cases involving alleged vaccine-related injuries." *Amendola/special master* at 5.

As the Act permits, the Amendolas moved for review of the special master's decision by the Court of Federal Claims. The Court of Federal Claims rejected the Amendolas' arguments and sustained the dismissal. *Amendola v. Secretary of the Dep't of Health and Human Servs.*, 23 Cl.Ct. 621, (1991) (*Amendola/Claims Court*).

## DISCUSSION

Drafting of statutes is an art. Not many law schools in their curriculum recognize

---

1. 42 U.S.C.A. §§ 300aa–1 to 300aa–34 (West 1991).

2. The United States Claims Court was renamed as the Court of Federal Claims on October 29, 1992. *See* Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516 (1992).

3. Part of the vaccination series for immunization against diphtheria, pertussis and tetanus.

this, and thus training in the art is largely lacking. Even among those who develop skill in the art, the complexity of modern federal legislation and the process of committee markup and legislative bargaining does not always permit uniformly satisfactory results. As a consequence, the interpretation of statutes is also an art. But the range of artistic expression here is constrained by the fundamental obligation of the judicial branch to implement, not rethink, the purpose of the legislative branch.

■ When a statute expresses its purpose in short, clear terms, the duty of the court is to apply the statute as written. *See, e.g., VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1579, 16 USPQ2d 1614, 1618 (Fed.Cir.1990), *cert. denied,* — U.S. —, 113 L.Ed.2d 248 111 S.Ct. 1315 (1991). When the legislative purpose is incorporated in a complex piece of legislation, such as those establishing a major regulatory or entitlement program, the meaning of any particular phrase or provision cannot be securely known simply by taking the words out of context and treating them as self-evident. This rather straightforward homily is captured in the more pretentious proposition that parts of a statute *in pari materia* must be construed together.

The Vaccine Compensation Act is such a complex piece of legislation. It creates a major Federal compensation program. After establishing the basic rule for eligibility for compensation—the vaccine-related injury—the Act addresses in elaborate detail three kinds of issues: the substantive rules for determining when a compensable injury has occurred; the procedural steps for making that determination and the availability and scope of review of the initial determination, made by a special master; and thirdly, certain gate-keeping rules resulting from the fact that there are a complex set of effective dates for various parts and provisions of the Act.

Applying the Act to specific cases is further complicated by the fact that Congress saw fit to amend the Act in a number of particulars even before it became effective,

and has amended it regularly since. This court has already addressed several questions raised by litigants with regard to the meaning of the Act's provisions, *see, e.g., Munn v. Secretary of the Dep't of Health & Human Servs.,* 970 F.2d 863 (Fed.Cir. 1992) (the impact of the 1989 amendments to the Act on this court's and the Court of Federal Claims's review of decisions of the special master); *Massing v. Secretary of the Dep't of Health & Human Servs.,* 926 F.2d 1133 (Fed.Cir.1991) (whether 42 U.S.C. § 300aa–11(c)(1)(E) applies to preclude compensation under the Act based on prior settlement of a civil action against a non-administering physician); *Beck v. Secretary of the Dep't of Health & Human Servs.,* 924 F.2d 1029 (Fed.Cir.1991) (whether the $30,000 cap specified by 42 U.S.C. § 300aa–15(b) and 300aa–15(e)(3) limits all awards of compensation to attorneys for litigation under the Act, whether characterized as "fees" or as "costs"); *Brown v. Secretary of the Dep't of Health & Human Servs.,* 920 F.2d 918 (Fed.Cir.1990) (whether the $30,000 cap specified by 42 U.S.C. § 300aa–15(b) applies to the sum of lost wages, pain and suffering, and attorneys' fees); and *Wiggins v. Secretary of the Dep't of Health & Human Servs.,* 898 F.2d 1572 (Fed.Cir.1990) (whether 42 U.S.C. § 300aa–11(a)(7) applies to preclude compensation under the Act based on prior settlement of a civil action against the administering physician which was filed before the effective date of the Act); additional cases are pending in the court on various other questions raised by the Act.

It is the gate-keeping provisions of the Act that are before us in this suit. These gate-keeping provisions would not qualify as exemplars of the statutory drafting art. 42 U.S.C. § 300aa–11, entitled "Petitions for compensation," as it stood on August 14, 1990, the date on which the Amendolas filed their petition under the Act, contains the relevant provisions. *See* 42 U.S.C. §§ 300aa–11 notes, 300aa–10 note (Supp. II 1990) (effective dates of the 1990 and 1989 amendments). We therefore refer to 42 U.S.C. § 300aa–11 (1988 & Supp. I 1989), but note that none of the further amendments enacted to date, even if applied here,

affect substantively the provisions which determine the parties' rights in this action. For convenience of the reader, and to help in understanding our view of the overall statutory scheme regarding these gate-keeping provisions, we set out in a note at the end of this opinion the text of § 300aa–11(a) as it stood on the relevant date.

The various subsections of § 300aa–11, which contain these provisions, are both over-broad and too narrow. When read in isolation, they can be applied to the same fact pattern with different outcomes. For example, subsection (a)(4) provides that if a civil action against a vaccine administrator is brought before October 1, 1988 (the effective date of the Act), and no recovery is had, the plaintiff is not precluded from bringing a claim under the Act.[4] As petitioners point out, the provision does not say, as the Court of Federal Claims held, that the judgment in the case had to be rendered before the effective date of the Act, only that the action had to be brought before then.

Subsection (a)(5)(A) states that if a plaintiff has such a suit pending on October 1, 1988, the plaintiff *may* at any time within two years of that date or before judgment, whichever occurs first, dismiss the suit and claim under the Act. Subsection (a)(5)(B) states a more sweeping rule on the same point: a plaintiff who has a civil suit pending (the provision does not say pending when) for a vaccine-related injury may not file a petition at all. One way to make sense of these two paragraphs is to read them in reverse—(a)(5)(B) states a general rule barring compensation under the Act if a civil suit has been earlier initiated and is pending **on the effective date of the Act** (this is the way the Court of Federal Claims read it); (a)(5)(A) states an exception if the suit is promptly terminated (within two years of the effective date of the Act) before judgment.

Although ferreting out the meaning of the Act by parsing the language of these several subsections is like trying to understand the Rule Against Perpetuities by reading the Duke of Norfolk's Case[5], petitioners' arguments come down to two basic propositions. The first is that the Act should be read to permit their claim to thread its way through the language gaps left by the draftsmen. They support this by appeals to the broad remedial nature of the Act, and by the absence of language in the Act expressly and specifically barring their claim. The second is that even if the provisions when read together serve to block a typical civil suit in the circumstances of their case, theirs is not such a suit. They argue that their suit was based on the negligence of the administrator of the vaccine, and the Act is designed to encompass only nonnegligent, strict liability claims against a manufacturer and a participating administrator of the vaccine. We address each of these arguments in turn.

1.

The first argument made by petitioners is that the gate-keeping provisions of the Act do not expressly and specifically describe the fact pattern of their case, and therefore the Act does not bar their petition for compensation. To understand their point, it is necessary to look at the basic structure of the Act, and the way in which Congress dealt with the timing problems created by that structure.

October 1, 1988 is a critical date under the Act. The Act is written from the viewpoint of providing compensation for vaccine-related injuries which occur as a result of vaccine administrations given after that date. But the impetus for the Act was the mounting record of injuries, attributed to the vaccine, which had occurred before the Act was written and passed in 1986, and the impact of resulting law suits on the

---

**4.**   (a)(4) If in a civil action brought against a vaccine administrator or manufacturer before October 1, 1988, damages were denied for a vaccine-related injury or death or if such civil action was dismissed with prejudice, the per-

son who brought such action may file a petition under subsection (b) of this section for such injury or death.

**5.**   22 Eng.Rep. 931 (1682).

manufacturers and their unwillingness to keep producing vaccine.

Given that history, Congress placed in the Act certain provisions to make it possible for pre-Act vaccine-related injuries to be compensated under the Act. These are the provisions at issue. As noted, subsection (4) states the proposition that if a civil action was brought against a vaccine administrator (or manufacturer) before October 1, 1988, and damages were denied (or the action was dismissed with prejudice), the plaintiff may seek compensation under the Act. With regard to this provision, petitioners argue that this provision:

> applies to actions which were commenced *before* the effective date of the subpart and *subsequently* damages were denied even if the denial was after the effective date of the subpart. The language of the Statute does not address *when* the damages were denied but just that the *action was commenced* prior to the effective date of the subpart. Therefore, section (a)(4) applies to *all* claims commenced before the effective date of the subpart and pending on the effective date of the subpart and *supports* Petitioners' claim for damages.

But that reading neither does justice to the structure of the Act nor to its purpose. It is necessary to look at the whole of section 300aa–11. Subsection (a)(1) explains how to initiate a petition under the Act. Subsections (a)(2) and (a)(3) state the general rule applicable to post-Act (i.e., after October 1, 1988) vaccine-related injuries—a petitioner must exhaust the remedy under the Act before resorting to civil litigation.

Subsections (a)(4), (a)(5), and (a)(8) address the question of pre-Act litigation.[6] Subsection (a)(8) deals with appeals from judgments when such appeals were pending on October 1, 1988. It has no application to this case. The problem then is to make sense out of the provisions contained in subsections (a)(4) and (a)(5). As we previously noted, subsection (a)(5) has two parts, one stating a general proposition—if at the time the Act became effective a plaintiff has pending a civil action for a vaccine-related injury no petition for compensation under the Act may be filed; and an exception—if plaintiff promptly (within two years) dismisses the action before judgment, then a compensation petition is permissible.

■ Within this framework, would it make sense to construe subsection (a)(4) as permitting a plaintiff who had a suit pending on the effective date of the Act to take the suit to judgment, and upon obtaining an unfavorable judgment, then bring a petition for compensation? We think not. Congress' purpose is both clear and clearly evidenced by the statutory framework. The statute provides a strong bias in favor of bypassing the civil litigation route in favor of compensation claims under the Act.

For those whose injury or death was caused by a vaccine administered after October 1, 1988, the filing of a civil action for damages is foreclosed by the Act unless the claimant first files a petition under the Act.[7] *See* subsection (a)(2). For those who had already filed an action for damages stemming from a vaccine administered before October 1, 1988, the Act protected, within limits, the opportunity to choose to file a petition, unless the claimant had already been awarded damages as a result of the civil action. And those who had yet to file a civil action for damages stemming from a vaccine administered before the cut-off date had to choose—file a petition, or give up their right to file under the Act and instead file a civil action.

---

**6.** Subsection (a)(7) also seems to deal with pre-Act litigation, although it does not so specify. It states that a successful civil suit against either an administrator or manufacturer bars a compensation remedy under the Act. Since, for vaccines administered after October 1, 1988, the Act bars such suits until after the compensation procedure is exhausted, this appears to be limited to favorable judgments obtained prior to the Act. And subsection (a)(6) applies to vaccine administrations which occurred prior to November 15, 1988, but for which suit was brought after that date.

**7.** Except for civil actions for $1,000 or less. *See* 42 U.S.C. § 300aa–11(a)(2)(A).

The Act clearly intends that litigation prior to pursuing the compensation remedy be discouraged. To read into subsection (a)(4) an unexpressed exception to this purpose is unwarranted. We agree with the Court of Federal Claims that, when looked at as a whole, the special relief provided by subsection (a)(4) is intended to be limited to cases which were brought *and concluded* before the Act became effective.

### 2.

This conclusion is reinforced and fully supported by the history of Congress' amendments to these gateway provisions. When the Act was first enacted in 1986 with a 1988 effective date, it contained language which expressed Congress' intent to bar petitions such as that of the Amendolas unless the escape clause provided by subsection (a)(5)(A) was invoked. That language was contained in original subsections (a)(5)(A) and (a)(5)(B), Pub.L. No. 99–660, § 2111(a)(5)(A)–(B), 100 Stat. 3743, 3759 (1986) (codified at 42 U.S.C. § 300aa–11(a)(5)(A)–(B) (1988)) which, respectively, read:

> (A) A plaintiff who on the effective date of this subtitle [October 1, 1988] has pending a civil action for damages for a vaccine-related injury or death may, at any time within 2 years after the effective date of this title [October 1, 1988] or before judgment, whichever occurs first, elect to withdraw such action without prejudice and file a petition under subsection (b) for such injury or death.
>
> (B) If a plaintiff who on the effective date of this subtitle [October 1, 1988] had pending a civil action for damages for a vaccine-related injury or death does not withdraw the action under subparagraph (A), such person may not file a petition under subsection (b) for such injury or death.

Had subsections (a)(5)(A) and (a)(5)(B) read that way when the Amendolas filed their petition in 1990, there would be little question that the Amendolas would have been barred from initiating a compensation proceeding under the Act.

However, in 1989, Congress addressed a problem unrelated to that raised by the Amendolas' petition, and amended the statutory language for that purpose. That problem was that petitioners with pending civil actions as of the effective date of the Act were continuing to allow their cases to lie dormant in the courts while pursuing compensation proceedings under the Act. H.R.Rep. No. 247, 101st Cong., 1st Sess. 511 (1989), *reprinted in* 1989 U.S.C.C.A.N. 1906, 2237. Congress wanted to make clear that if a petitioner wanted to use the escape clause of subsection (a)(5)(A)—electing no-fault compensation under the Act within two years of October 1, 1988 or before judgment, whichever occurs first, in lieu of pursuing the civil action—that the petitioner would have to make an affirmative petition to dismiss the civil action. *Id.* To accomplish this, Congress amended subsections (a)(5)(A) and (a)(5)(B). Regarding subsection (a)(5)(A), Congress took out the phrase "elect to withdraw such action" and replaced it with the phrase "petition to have such action dismissed without prejudice or costs." Pub.L. No. 101–239, § 6601(c)(3)(A), 103 Stat. 2106, 2285 (1989). Regarding subsection (a)(5)(B), Congress took out the phrases "who on the effective date of this subtitle had pending" and "does not withdraw the action under subparagraph (A)" and replaced the former with the phrase "has pending." Pub.L. No. 101–239, § 6601(c)(3)(B), 103 Stat. 2106, 2285 (1989). The House Report indicates these amendments were simply to provide "technical clarification of the ability of a petitioner with a civil action pending to enter the compensation system." H.R.Rep. No. 247, 101st Cong., 1st Sess. 511 (1989), *reprinted in* 1989 U.S.C.C.A.N. 1906, 2237. Congress clearly indicated it was not intending to open a new door for petitioners such as the Amendolas to step through. The only opening available to such petitioners remained through subsection (a)(5)(A).

### 3.

The Amendolas further argue, as they did before the Court of Federal Claims, that a malpractice action for a doctor's misconduct is not a "civil action for

damages" as contemplated by the Act. This argument has two parts. One is that the use of the term "administrator" in the phrase "vaccine administrator or manufacturer" relates to an individual who, like the manufacturer, simply provides a vaccine which, because of its inherent properties, causes injury or death. Thus they argue that a doctor who is alleged to have caused an iatrogenic injury is not an administrator as contemplated by the Act. They illustrate the point by asking whether a suit against a doctor who broke a needle while injecting DPT and caused hemorrhaging and nerve injury would be a vaccine-related civil action for damages.

As the Court of Federal Claims noted, there is some support in the statute and legislative history for the proposition that the Act was not drafted with the problem of iatrogenic injury in mind. Clearly, the motivating factor behind enactment of the legislation was the desire to protect the vaccine supply by shielding manufacturers from exposure to liability resulting from the small but nevertheless statistically significant incidence of unavoidable injury or death from widespread use of the vaccine.

However, the term "administrator" does not appear in the subsection of 42 U.S.C. § 300aa–11 applicable to the Amendolas' claim, subsection (a)(5). (Although it does appear in subsection (a)(4), that subsection is not applicable because the Amendolas' civil action was not concluded prior to the effective date of the Act.). Thus, it is not obvious that the Amendolas' argument has relevance to the proper interpretation of subsection (a)(5).

Moreover, even assuming, as the Amendolas urge, that the meaning of the term "administrator" for purposes of the Act has some relevance to the proper interpretation of subsection (a)(5), that term is not limited in the way the Amendolas suggest. The Act was specifically amended in 1987, before its effective date, to apply to administrators as well as manufacturers of the vaccine. *See* 42 U.S.C. § 300aa–11(a), note. The legislative history of the 1987 amendments indicates Congress clearly intended by the amendment to apply the Act to pediatricians who administered a vaccine as well as to the manufacturer who made it. The Amendolas have not pointed to any suggestion in the legislative history that Congress intended to adopt the limited definition of "administrator" the Amendolas suggest. No evidence in the record before us directly supports the interpretation urged by the Amendolas. Thus, the plain meaning of the statute controls. *See Massing v. Secretary of the Dep't of Health and Human Servs.*, 926 F.2d 1133, 1135 (Fed.Cir.1991).

The second part of the argument here is that the statute was not meant to shield negligent acts of either manufacturers or administering doctors, but was meant rather to protect them only from 'strict liability' claims. This argument relies on the statutory definition for "vaccine-related injury or death," which is "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such a vaccine." 42 U.S.C. § 300aa–33(5).

From this the Amendolas conclude that the Act does not cover mere negligence, either by the manufacturer or the administrator. However this is too broad a reading. The exclusion refers only to "intentionally added" extraneous material. There is no reference to merely negligent contamination, or to an occasion of negligence in deciding, for example, whether to administer an otherwise satisfactory vaccine, as is alleged to have been the case here. The only exclusion is exposure to a foreign substance purposefully introduced into the vaccine itself. We see no basis for drawing a bright line that excludes erroneous judgment calls by the administrator, as well as negligent contamination.

To the extent it is the position of the Amendolas that the injury in this case is not really "vaccine-related," we reject that argument as well. If this were a situation in which the direct cause of the injury was a contaminated needle, or the doctor's neg-

ligent dropping of an infant patient, or other negligence facially **unrelated to the vaccine's effects,** then the hypotheticals posed by the Amendolas might require further examination.[8] In the case before us, in which the alleged negligence was a judgment call about whether to administer the vaccine under the circumstances presented, **and the injury resulted from the administration of the vaccine,** we have no difficulty in concluding that any resulting injury from the vaccine is vaccine-related.

### CONCLUSION

The Court of Federal Claims correctly sustained the special master's decision dismissing the Amendolas' petition for compensation.

**AFFIRMED.**

### APPENDIX

NOTE: Section 300aa–11(a) as it stood on August 14, 1990 reads:

**(a) General rule**

(1) A proceeding for compensation under the Program for a vaccine-related injury or death shall be initiated by service upon the Secretary and the filing of a petition containing the matter prescribed by subsection (c) of this section with the United States Claims Court. The clerk of the United States Claims Court shall immediately forward the filed petition to the chief special master for assignment to a special master under section 300aa–12(d)(1) of this title.

(2)(A) No person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, and no such court may award damages in an amount greater than $1,000 in a civil action for damages for such a vaccine-related injury or death, unless—

(i) a petition has been filed, in accordance with section 300aa–16 of this title, for compensation under the Program for such injury or death,

(ii) the United States Claims Court has issued a judgment under section 300aa–12 of this title on such petition, and

(iii) such person elects under section 300aa–21(a) of this title to file such an action.

(B) If a civil action which is barred under subparagraph (A) is filed in a State or Federal court, the court shall dismiss the action. If a petition is filed under this section with respect to the injury or death for which such civil action was brought, the date such dismissed action was filed shall, for purposes of the limitations of actions prescribed by section 300aa–16 of this title, be considered the date the petition was filed if the petition was filed within one year of the date of the dismissal of the civil action.

(3) No vaccine administrator or manufacturer may be made a party to a civil action (other than a civil action which may be brought under paragraph (2)) for damages for a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988.

(4) If in a civil action brought against a vaccine administrator or manufacturer before October 1, 1988, damages were denied for a vaccine-related injury or death or if such civil action was dismissed with prejudice, the person who brought such action may file a petition under subsection (b) of this section for such injury or death.

(5)(A) A plaintiff who on October 1, 1988, has pending a civil action for damages for a vaccine-related injury or death may, at any time within 2 years after October 1, 1988, or before judgment, whichever occurs first, petition to have such action dismissed without prejudice

---

**8.** We note without further comment the logic trap this argument creates for the Amendolas— if the negligent action of the doctor which caused the injury was not vaccine-related, then there would be no eligibility for compensation under the Act as a result of that injury. See § 300aa–11(a)(9).

or costs without prejudice [sic] and file a petition under subsection (b) of this section for such injury or death.

(B) If a plaintiff who [sic] has pending a civil action for damages for a vaccine-related injury or death, such person may not file a petition under subsection (b) of this section for such injury or death.

(6) If a person brings a civil action after November 15, 1988 for damages for a vaccine-related injury or death associated with the administration of a vaccine before November 15, 1988, such person may not file a petition under subsection (b) of this section for such injury or death.

(7) If in a civil action brought against a vaccine administrator or manufacturer for a vaccine-related injury or death damages are awarded under a judgment of a court or a settlement of such action, the person who brought such action may not file a petition under subsection (b) of this section for such injury or death.

(8) If on October 1, 1988, there was pending an appeal or rehearing with respect to a civil action brought against a vaccine administrator or manufacturer and if the outcome of the last appellate review of such action or the last rehearing of such action is the denial of damages for a vaccine-related injury or death, the person who brought such action may file a petition under subsection (b) of this section for such injury or death.

(9) This subsection applies only to a person who has sustained a vaccine-related injury or death and who is qualified to file a petition for compensation under the Program.