**Shirley KLAHN, Petitioner,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

**No. 90–934V.**

United States Court of Federal Claims.

May 24, 1994.

Steven G. Danielson, Eau Claire, WI, Atty. of record, for petitioner.

Mary Hampton Mason, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for respondent.

## ORDER

HARKINS, Senior Judge.

Respondent seeks review in the United States Court of Federal Claims under the National Childhood Vaccine Injury Compensation Program (the Program) of a special master's decision, unpublished, filed December 15, 1993. The special master denied respondent's motion to dismiss for lack of jurisdiction and awarded compensation under the Program. Respondent seeks review of the jurisdictional issue.

The Program was established in 1986 as part of the National Childhood Vaccine Injury Act, Pub.L. No. 99–660, tit. III, § 311(a), 100 Stat. 3758. Amendments in 1987, 1988, 1989, 1990, and 1991 changed substantially procedures applicable to the functions of special masters, and review of decisions of special masters. Provisions governing the Program, as amended, are contained in 42 U.S.C. §§ 300aa–10 through 300aa–34 (1988 & Supp. IV 1992).[1] For convenience, further reference to the Program in this order will be to the relevant subsection of "42 U.S.C. § 300aa——."[2]

Petitioner is an immune deficient individual. On June 1, 1988, petitioner's personal physician, who also was the pediatrician for petitioner's daughter, recommended that the daughter receive standard infant vaccinations, including an oral polio vaccine (OPV), and referred them to the Public Health Services of Jackson County, Wisconsin. On June 14, 1988, a Public Health Services nurse administered an OPV to petitioner's daughter. On August 17, 1988, petitioner began experiencing paraparesis.[3]

The petition for compensation under the Program was filed September 11, 1990. As of the date of filing the vaccine petition, no civil action was pending or had been filed. The petition averred: "Petitioner has never received compensation in the form of an award or settlement as a result of her paralytic polio. There has never been any prior civil action commenced relating to the vaccination." In reliance on the petition and this declaration, and review of medical records accompanying the petition, respondent on February 8, 1991, conceded that petitioner satisfied the criteria for demonstrating a presumptively vaccine-related poliomyelitis or paralytic polio, and that there was not a preponderance of the evidence that the condition was due to factors unrelated to the administration of the OPV to her daughter. Accordingly, compensation was appropriate.

During proceedings on the appropriate compensation, a civil action was filed in Jackson County, Wisconsin, Circuit Court, on September 25, 1991, by petitioner, her husband, and her daughter naming as defendants Dr. Jerome Kitowski, his employer, the Krohn Clinic, Physicians Insurance Co. of Wisconsin, Inc., the Department of Health and Social Services of the State of Wisconsin

---

1. On Oct. 29, 1992, the United States Claims Court was renamed the United States Court of Federal Claims, pursuant to Title IX, Section 902 of the Federal Courts Administration Act of 1992, Pub.L.No. 102–572, 106 Stat. 4506 (1992).

2. The Health Information, Health Promotion, and Vaccine Injury Compensation Amendments of 1991, Pub.L.No. 102–168, 105 Stat. 1102 (Nov. 26, 1991) amended Section 12(g)(2) which requires notice to a petitioner when the Court of

Federal Claims fails to enter a judgment on a petition within 420 days, exclusive of suspension and remand periods. This order constitutes notice to petitioners pursuant to Section 12(g)(2), as amended.

3. This is an OPV community contact case, *i.e.,* the vaccine is administered to a third party from whom the injured contracts polio through contact.

and the Wisconsin Patient Compensation Fund. At a status conference on April 19, 1993, petitioner confirmed that the civil action was then pending.

Respondent on June 1, 1993, moved to dismiss on the ground that Section 11(a)(6) precluded the filing of a petition under the Program. Petitioner and her family dismissed the Wisconsin civil action on June 22, 1993, prior to any judgment or settlement.

The special master determined that Section 11(a)(6) did not apply to petitioner's civil lawsuit because the action was not filed against either the manufacturer of the vaccine or the actual administrator of the vaccine. The special master relied on the analysis in *Schumacher v. Secretary of Dep't of Health & Human Servs.*, 2 F.3d 1128 (Fed. Cir.1993), of the legislative history applicable to Section 11(a), and the conclusion that the phrase "civil action" in each provision of Section 11(a) other than (3) means a civil action against an administrator or a manufacturer of a vaccine. The special master also concluded that there is no "administrator," as defined in the Program, in a community contact case, and that a referring physician is not a Program "administrator." The "administrator" in a referral situation was defined by the special master as the doctor actually inoculating the individual, not the referring doctor.

*Discussion*

Review of a special master's decision in the Court of Federal Claims is of a very limited nature. This court may not set aside any findings of fact or any conclusion of law of the special master unless such findings of fact or conclusion of law are "found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Section 12(e)(2)(B). In the absence of such findings, this court either must uphold the findings of fact and conclusions of law and sustain the decision or remand the petition to the special master for further action in accordance with the court's directions. Sections 12(e)(2)(A) and (C).

■ The standard applicable to a review of a special master's findings of fact does not differ from the standard applicable to a re-

view of a special master's conclusions of law. The standard of review for both conclusions of law and for findings of fact is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." In a review in this court under the Program, questions of law are not reviewed de novo. A de novo review would be contrary to the language of the statute, and would put an erroneous gloss on the standard established in Section 12(e)(2)(B). On issues of law, the Program standard of review requires recognition be given to the special master's expertise in the development of the procedures in this novel Program. A decision on issues of law applicable to the Program should be overturned only when error is unmistakenly clear.

At issue in this case is the meaning of Section 11(a)(6). The special master's decision on the jurisdictional issue is a conclusion of law.

■ Section 11(a) sets out circumstances under which a petitioner is eligible to pursue compensation for vaccine-related injuries. The provisions of Section 11(a) have been labeled the "gate-keeping provisions" of the Program. *Amendola v. Secretary of Dep't of Health & Human Servs.*, 989 F.2d 1180, 1182 (Fed.Cir.1993). The various subsections deal with rules that apply to vaccine-related injuries which result from vaccine administrations given after the effective date, and circumstances when a petitioner may proceed under the Program for pre-Act vaccine-related injuries. The court's jurisdiction involves compliance with the gate-keeping provisions, one of which is Section 11(a)(6).

Section 11(a)(6) provides:

If a person brings a civil action after November 15, 1988 for damages for a vaccine-related injury or death associated with the administration of a vaccine before November 15, 1988, such person may not file a petition under subsection (b) of this section for such injury or death.

Section 11(a)(6) has been construed in a number of cases, and its terms have been declared "not ambiguous." *See Lamb v. Secretary of Dep't of Health & Human Servs.*, 24 Cl.Ct. 255, 257 (1991); *see also Salceda v.*

*Secretary of Dep't of Health & Human Servs.*, No. 90–1304V, slip op. at 1, 1994 WL 139375, at *1 (Fed.Cl.Spec.Mstr. Apr. 6, 1994) (further review pending); *Benedict v. Secretary of Dep't of Health & Human Servs.*, 29 Fed.Cl. 587 (1993); *Fournier v. Secretary of Dep't of Health & Human Servs.*, No. 90–1050V, 1992 WL 93242 at *1, 1992 U.S.Cl.Ct. LEXIS 191, at *1 (Cl.Ct. Spec.Mstr. Apr. 17, 1992). These cases, however, concerned situations where the civil action was filed after the November 15th cutoff date, but before the filing of a petition in the Program. They did not involve the unique factual posture of this case.

Section 11(a)(6) by its terms does not include the phrase "vaccine administrator or manufacturer." Respondent maintains:

> The plain language of the provision is clear: any claimant who files a civil action after November 15, 1988, for an injury allegedly resulting from a vaccine administered prior to that date has elected his or her remedy and is barred from pursuing a claim in the Vaccine Program.

Respondent broadly interprets the prohibition of Section 11(a)(6) as encompassing any civil action as long as it was filed anytime after the enactment of the legislation. Respondent further maintains that petitioner's dismissal of the state action is inadequate to preserve this court's jurisdiction over petitioner's vaccine claim.

Respondent's interpretation of Section 11(a)(6) is over broad. This section does not establish a blanket prohibition against filing a civil action after November 15, 1988. Section 11(a)(6) does not apply to this case.

The plain language of the statute prohibits the *filing* of a petition under the Program where a civil action is filed after November 15, 1988. This language implies that a petitioner, once having filed a civil action after the designated date, may not "then" or "subsequently" *file* a petition with the Program. The filing of a civil action prior to the initiation of a vaccine claim indicates that the person has chosen to forego his or her opportunities under the Program and to pursue a traditional tort remedy. Moreover, use of the term "file" indicates that one may not initiate or take the first step in seeking re-covery under the Program. This position is clarified by the legislative history.

The use of "civil action" with limiting language in some subsections of Section 11(a), but not in others prompted the Federal Circuit's examination in *Schumacher* of the various meanings of "civil action" under the Vaccine Act as intended by Congress.

> Congress has clearly not used the phrase 'civil action for damages for a vaccine-related injury or death' or its functional equivalent to mean the same thing in each of its incarnations. Accordingly, when the phrase is used without clear references, ... the meaning of ʻthe 'civil action' can only be determined by looking at the purpose of the provision within the general statutory scheme, as illuminated by the legislative history.

*Schumacher*, 2 F.3d at 1132. Section 11(a)(6) is the only subsection of Section 11(a), other than Section 11(a)(5)(A) which refers to "civil action" without mentioning vaccine administrators or manufacturers.

■ Resort to the legislative history is proper. The court will defer to the clear meaning of a statute when the language is sufficiently clear, and the plain meaning of the statute is supported by the legislative history. *Rodriguez v. United States*, 480 U.S. 522, 526, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987). Indeed, the plain meaning of a statute does not preclude an analysis of legislative history. *See Ocean Drilling & Exploration Co. v. United States*, 220 Ct.Cl. 395, 600 F.2d 1343 (1979).

The legislative history pertaining to Section 11(a)(6) confirms this interpretation. The Vaccine Act essentially discusses vaccine-injured persons in three general groups:

> 1) those who were injured by a vaccine more than eight years before enactment of the legislation; 2) those who were injured by a vaccine that was administered before the enactment of the legislation, but less than eight years before; and 3) those who are injured by a vaccine that is administered after the enactment of the legislation.

H.R.Rep. No. 908, 99th Cong. 2d Sess. 13 (1986), 1986 U.S.Code Cong. & Admin.News,

6287, 6354. Because the vaccine which caused petitioner's injuries in this suit was administered prior to the enactment of the Vaccine Act but within the eight year time limit, petitioner should be categorized with Group Two. The legislative history then proceeds to outline the effect of various factors upon the petitioner's entitlement to seek damages under the compensation system. These various scenarios are then espoused in each of the subsections of Section 11(a). Unfortunately, the legislative history does not contemplate a situation identical to the one in the instant case where the vaccine was administered prior to enactment, and the civil action in issue was filed *after* the filing of a vaccine petition in the Court of Federal Claims. The scenario which corresponds to Section 11(a)(6) provides the following:

> If a person in the second group initiates a civil action against a manufacturer after the enactment of this legislation without first completing the compensation system, he or she may not *enter* the compensation system.

*Id.* at 14, 1986 U.S. Code Cong. & Admin.News, at p. 6355 (emphasis added). The usage of "enter" in the legislative history undermines respondent's argument. If a civil action has been filed before the petitioner has chosen to participate in the compensation system, the petitioner is prohibited from passing through the gate into the compensation system. Had Congress intended an application corresponding to respondent's, the drafters would have used language which would encompass actions beyond the initial step, such as "participate," "recover," or "continue." In this case, no civil action was instituted prior to entering the compensation Program.

■ Respondent clearly is correct in its assertion that petitioner may not maintain parallel actions for a vaccine-related injury enabling her to recover twice for the same injury. Contrary to respondent's view, however, dismissal of the state action, rather than petitioner's vaccine claim, is appropriate to cure the procedural situation. Since petitioner has already passed through the gates of the Vaccine Act, this case resembles those in Group Three who have suffered a post-Act vaccine-related injury and therefore are required to participate in the Program prior to engaging in a traditional tort action. The logical result would be to follow the mandates of that legislation. With respect to Group Three, a filing of a civil action during the pendency of a suit in this forum, but prior to completion of the Program and thus prior to acceptance of judgment, does not divest this court of jurisdiction. "Subsections (a)(2) and (a)(3) [of Section 11] state the general rule applicable to post-Act (*i.e.*, after Oct. 1, 1988) vaccine-related injuries—a petitioner must exhaust the remedy under the Act before resorting to civil litigation." *Amendola*, 989 F.2d at 1184. These persons are prohibited from bringing a civil action "unless a petition has been filed … for compensation under the Program for such injury or death," a judgment on such petition has been issued, and such petitioner elects under Section 21(a) to reject the judgment of this court and file a civil action. Section 11(a)(2)(A). Essentially, such persons must complete the procedure established under the Program before bringing a civil action in state or federal court.

If petitioner were a person who initiated a civil action against a manufacturer *after the enactment* of this legislation without first *entering* the compensation system, she would be prohibited from participating in the Program, and dismissal of the civil action would not remedy the jurisdictional defect. However, having properly passed through the gate and entered the compensation system, petitioner must comply with those procedures established in Sections 11(a)(2) and (a)(3). She too will have the opportunity to make an election to accept or reject this court's judgment. Thus, this court continues to have jurisdiction over petitioner's vaccine claim.

Respondent contends that the Federal Circuit decisions in *Massing v. Secretary of Dep't of Health & Human Servs.*, 926 F.2d 1133 (Fed.Cir.1991), and *Amendola* preclude the special master's interpretation of *Schumacher*. Respondent argues that, as interpreted by the special master, the panel's decision in *Schumacher* conflicts with prior panel decisions, and under Federal Circuit

precedent, prior decisions of a panel are binding precedent on subsequent panels until clarified by a decision en banc.[4] This argument overlooks basic factual differences in the cases and differences in statutory provisions upon which the respective case analyses were based.

First, the special master noted that the panel in *Schumacher* discussed both *Massing* and *Amendola,* and was not constrained by those decisions. Further, respondent's reliance on *Massing* and *Amendola* is misplaced. Both *Massing* and *Amendola* involved suits initiated prior to the effective date of the Vaccine Act against vaccine manufacturers and/or administrators. Both cases involved civil claims that were resolved either by settlement or judgment prior to the filing of the claim under the Vaccine Act. Those cases provide no support for respondent's position under the facts of this case.

In *Massing,* the claimants filed an action, naming as defendants, the doctor who actually administered the vaccine along with his employer and the vaccine manufacturer. The claimant settled the claims against the doctor's employer for $50,000, dismissed the action against the remaining defendants, and subsequently filed a petition for compensation under the Vaccine Act. Thus, the claimants sought a double recovery for the vaccine-related injury. The section of the Vaccine Act at issue was 11(*c*) not 11(*a*); the petition under the Vaccine Act was filed after resolution of a civil suit against the physician who actually administered the vaccine.

*Amendola* does not control the issue in *Schumacher.* In that case, the claimants filed suit against the doctor who actually administered the vaccine. The case went to verdict, which was in favor of the doctor, and judgment was entered dismissing the complaint. By allowing the case to proceed to judgment after the effective date of the Vaccine Act, the court found that the claimants forfeited their remedy under the Act. In this case, no judgment was rendered in the civil action, nor did the civil action name the administrator.

■ The special master, on the basis of *Schumacher,* stated that the term "civil action" in Section 11(a)(6) is circumscribed by the words "against the manufacturer or administrator." Respondent asserts that the conclusion regarding civil action is merely dicta, and attempts to differentiate *Schumacher* on the basis that it deals with Section 11(a)(5), not Section 11(a)(6), and thus is irrelevant. The importance of *Schumacher* is its analysis of the legislative history of the gate-keeping provisions. The Federal Circuit's general conclusion regarding Section 11(a) makes it applicable to this case. This analysis of Section 11(a) was an integral part of the holding in *Schumacher.* The special master's reliance on *Schumacher* was proper. Decisions of the Federal Circuit are binding on this court. The special master's application of an analysis regarding the same statute in issue cannot be found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

■ Respondent contends the family physician who recommended the OPV was a vaccine "administrator" under the Program. The special master concluded that respondent's argument would extend the definition of "administrator" from the actions of an actual administering doctor to others in the medical chain of administration. The special master, after an analysis of *Amendola* and the scant legislative history, declined to stray from the plain and ordinary definition of the term.

The definition section of the Vaccine Act, Section 33, includes "manufacturer" but does not include "administrator." Further, neither the 1987 amendments nor their legislative history satisfactorily illuminates the court as to who might be an "administrator" in the Program. The scant legislative history of the 1987 amendments states in pertinent part:

> This section requires that a person seeking damages for vaccine injury against a *vac-*

---

4. Respondent cites *Newell Cos. v. Kenney Mfg. Co.,* 864 F.2d 757, 765 (Fed.Cir.1988), *cert. denied,* 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 30 (1989), a patent case that involved a jury trial and obviousness as a question for a jury. The legal issues are not apposite to statutory interpretations that arise in the development of the Program.

*cine administrator (e.g., a pediatrician or an immunization clinic)* first apply for compensation.

H.R.Rep. No. 391, 100th Cong., 1st Sess. 699 (1987), 1987 U.S. Code Cong. & Admin.News 2313–1, 2313–373. Congress used as an example an institution whose primary purpose is to actually administer vaccines. This supports the special master's conclusion.

The Federal Circuit opined that "Congress clearly intended by the amendment to apply the Act to pediatricians who *administered* a vaccine as well as to the manufacturer who made it." *Amendola*, 989 F.2d at 1186 (emphasis added). *Amendola* does not define administrator as broadly as suggested by respondent. As the special master points out, the civil action brought in *Amendola* was against the doctor who actually inoculated the child. The special master ascribed the plain meaning of "administrator" to this term. The facts clearly show that the family physician did not give or administer the vaccine to petitioner's daughter; the Public Health Services administered the vaccine.

Congress established a small group to be protected from traditional tort actions. After review of the suits which emanated from the vaccinations, Congress decided that the Act should embrace administrators. In his decision, the special master ascribed the plain and ordinary definition of the term "administrator" as the one who actually inoculates the individual. Without any authority to the contrary to support respondent's contention that a referring doctor should also be considered an administrator, the special master rejected respondent's argument. The special master's decision, under the review standards, cannot be set aside.

On the basis of the record in this case, and on the foregoing discussion, respondent has not shown that the special master's findings of fact and conclusions of law are arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. Accordingly, the findings of fact and conclusions of law of the special master applicable to petitioner's claim are upheld and the decision is sustained. The Clerk is directed to enter judgment in accordance with the special master's decision.