# United States Court of Appeals for the Federal Circuit

05-5139

DANIEL L. AULL
and FRANCES C. AULL,
as Co-Administrators of the Estate of
William Daniel Blake Aull, deceased,

Petitioners-Appellants,

v.

SECRETARY OF HEALTH OF HUMAN SERVICES,

Respondent-Appellee.

David L. Yewell, Yewell Law, LLC, of Owensboro, Kentucky, for petitioners-appellants.

Lynn E. Ricciardella, Attorney, Torts Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. On the brief were Peter D. Keisler, Assistant Attorney General, Timothy P. Garren, Director, Vincent J. Matanoski, Assistant Director, Gabrielle M. Fielding, Assistant Director, and Ann K. Donohue, Trial Attorney. Of counsel was Julia W. McInerny, Trial Attorney.

Appealed from: United States Court of Federal Claims

Senior Judge Eric G. Bruggink

# United States Court of Appeals for the Federal Circuit

05-5139

DANIEL L. AULL
and FRANCES C. AULL,
as Co-Administrators of the Estate of
William Daniel Blake Aull, deceased,

Petitioners-Appellants,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent-Appellee.

DECIDED:  August 28, 2006

Before RADER, SCHALL, and GAJARSA, Circuit Judges.

SCHALL, Circuit Judge.

Daniel L. and Frances C. Aull, as co-administrators of their deceased son's estate,[1] appeal the final decision of the United States Court of Federal Claims that sustained the decision of the special master dismissing their petition for compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34 ("Vaccine Act" or "Act") for lack of jurisdiction.  Aull v. Sec'y of Health & Human Servs.,

___

[1]    The name of the Aulls' deceased son was William Daniel Blake Aull.

65 Fed. Cl. 400 (2005) ("Aull II").  The special master ruled that the pendency in state court of a claim against the administering physician for wrongful death bars the Aulls from seeking compensation under the Vaccine Act.  Aull v. Sec'y of Health & Human Servs., No. 02-1183V, 2004 WL 2958453, at *11 (Fed. Cl. Spec. Mstr. Dec. 2, 2004) ("Aull I").  Because we conclude that the Aulls' state court proceeding alleges a "vaccine-related . . . death" within the meaning of 42 U.S.C. § 300aa-11(a)(5)(B), we affirm the decision of the Court of Federal Claims.

BACKGROUND

I.

Both the special master and the Court of Federal Claims based their rulings on the facts as alleged in the Aulls' petition for compensation.  We do likewise.

At the time of his death, Blake Aull was five years old.  On Friday, September 8, 2000, he received a series of vaccinations[2] from a nurse in the office of Dr. David Danhauer, in Owensboro, Kentucky.  See Aull II, 65 Fed. Cl. at 401.  Within two hours, Blake was running a temperature of 104 degrees.  Id. at 402.

Between the time of the vaccinations and Monday, September 11, Blake received medical care from several medical providers, including a doctor on call for Dr. Danhauer, two emergency room physicians, two radiologists, and numerous nurses and medical professionals.  Pet'r Br. at 4; see also Aull II, 65 Fed. Cl. at 401-02.  Although Dr. Danhauer did not see Blake until midmorning Monday, when Blake was brought to his office, Dr. Danhauer treated him from Monday, September 11, until his death on

---

[2]    Although it is not relevant to this appeal, the parties dispute whether Blake received Diphtheria and Tetanus Toxoid ("DT") vaccine or Diphtheria, Tetanus, and Pertussis ("DTP") vaccine.  The special master found by a preponderance of the evidence that Blake received DT vaccine.  Aull I, 2004 WL 2958453, at *1.

Tuesday, September 12, at 6:19 p.m. Pet'r Br. at 4; see also Aull II, 65 Fed. Cl. at 401-02.

II.

On September 10, 2001, the Aulls filed suit in Daviess County Circuit Court in Kentucky against Dr. Danhauer, Owensboro Pediatrics, PLLC, and other caregivers. Aull II, 65 Fed. Cl. at 401. The complaint included the following six counts of negligence:

> a) failure to recognize or treat [Blake's] pneumonia and deteriorating state in a timely manner;
>
> b) failure to diagnose pneumonia and prescribe antibiotics, or other proper medication;
>
> c) failure to admit Blake to the hospital;
>
> d) failure to act upon blood tests and laboratory results in a timely manner;
>
> e) failure to inform Mr. and Mrs. Aull of Blake's blood test results and x-ray results in a timely manner;
>
> f) failure to administer Blake's blood transfusion of September 12, 2000, at the . . . emergency room in a timely manner;
>
> g) failure to respond to Blake's special medical needs as a child with diffuse encephalopathy and a tracheotomy.

Id. None of the allegations in the complaint directly reference the vaccinations that Blake received on September 8, 2000, nor does the Kentucky suit seek compensation for injuries sustained from the vaccinations, namely pneumonia. It only seeks compensation for what the Aulls alleged was post-vaccination medical malpractice on the part of Blake's doctors: misdiagnosing and mistreating Blake's pneumonia.

III.

On September 11, 2002, while the Kentucky case was pending, the Aulls filed a petition for compensation under the Vaccine Act. Id. The petition stated:

> Blake received the immunization on September 8, 2000. Within 2 hours, Blake started running a temperature of 104 degrees. His parents fought to reduce his fever for the next three days, but as soon as it would break, it would rise again. Blake developed shortness of breath on September 11, 2000, and he was placed on a small flow of oxygen. On September 12, Blake continued to have a high temperature. At 4:45 p.m., he became very pale and stopped breathing. CPR was administered by the Aulls until the ambulance arrived. Blake was rushed to the Owensboro Mercy Health Systems emergency room. A tube was inserted through his nose into his stomach. It was determined that he was losing blood. All possible measures were taken, but Blake lost his struggle to live.

See id. at 402 (citing Pet. at 8, ¶ 24). The petition also stated that the report of the autopsy following Blake's death listed, as one of four final diagnoses, "chronic central nervous system changes with clinical history of diffuse encephalopathy with seizures." Pet. at 8, ¶ 25. A factor included in that diagnosis was "pneumonia, arising as a consequence of encephalopathy." Id. The petition's prayer for relief sought, inter alia, the sum of $250,000 for Blake's wrongful death; and (2) an amount to be determined by the court for pain and suffering. Id. at 9.

05-5139                                    4

In view of the pendency of the Aulls' state court case, the government moved before the special master to have the Aulls' Vaccine Act petition dismissed pursuant to 42 U.S.C. § 300aa-11(a)(2), (3), and (5).[3] Aull I, 2004 WL 2958453, at *2.

---

[3] Section 300aa-11(a) provides in relevant part:

(2)(A) No person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, and no such court may award damages in an amount greater than $1,000 in a civil action for damages for such a vaccine-related injury or death, unless a petition has been filed, in accordance with section 300aa-16 of this title, for compensation under the Program for such injury or death and--

(i)(I) the United States Court of Federal Claims has issued a judgment under section 300aa-12 of this title on such petition, and

(II) such person elects under section 300aa-21(a) of this title to file such an action, or

(ii) such person elects to withdraw such petition under section 300aa-21(b) of this title or such petition is considered withdrawn under such section.

(B) If a civil action which is barred under subparagraph (A) is filed in a State or Federal court, the court shall dismiss the action. If a petition is filed under this section with respect to the injury or death for which such civil action was brought, the date such dismissed action was filed shall, for purposes of the limitations of actions prescribed by section 300aa-16 of this title, be considered the date the petition was filed if the petition was filed within one year of the date of the dismissal of the civil action.

(3) No vaccine administrator or manufacturer may be made a party to a civil action (other than a civil action which may be brought under paragraph (2)) for damages for a vaccine-

05-5139                                    5

After initially denying the motion to dismiss, the special master granted the government's renewed motion to dismiss under 42 U.S.C. § 300aa-11(a)(5). Id. at *1-2. Emphasizing that the words "associated with the administration of a vaccine" are present in subsection 300aa-11(a)(2)(A), but not subsection 300aa-11(a)(5)(B), the special master determined that even actions that are not dependent on the administration of a vaccine for purposes of tort liability can preclude Vaccine Act petitions as long as they are "vaccine-related." Id. at *4-6; see Aull II, 65 Fed. Cl. at 403. The special master reasoned that the Kentucky suit was a pending "civil action against the vaccine administrator for damages for an injury or death associated with a Table vaccine." Aull I, 2004 WL 2958453, at *6. The Aulls' petition was thus subject to dismissal, the special master ruled.

The Aulls moved in the Court of Federal Claims for review of the special master's decision. After briefing was completed, the court held oral argument. During oral argument, counsel for the Aulls was asked if the Kentucky suit is a challenge to Dr. Danhauer's decision to administer the vaccine. Aull II, 65 Fed. Cl. at 402. Counsel for the Aulls responded:

> Dr. Danhauer in the state case, we think, was negligent Monday, September the 11th, when this child presented to

---

(Cont'd. . . .)

> related injury or death associated with the administration of a vaccine after October 1, 1988.
>
> . . . .
>
> (5)(B) If a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such person may not file a petition under subsection (b) of this section for such injury or death.

his office at 10 a.m. . . . During the office exam of September the 11th, he did not review the reports he had faxed to his office [from the hospital emergency room] that said this child has pneumonia. He did not examine the child and diagnose pneumonia. He gave the wrong medication indicated.

. . .

The vaccine administered September 8, 2000, though it wasn't known at the time, weakened this child's immunity system, his ability to fight whatever might attack his body . . . . And so, when he was weakened by that immunization . . . when he developed pneumonia, Sunday - Sunday night, and went to the hospital, his body was further weakened by the vaccine. The pneumonia is what really killed this child.

Id.

On April 29, 2005, the Court of Federal Claims affirmed the special master's dismissal. Id. at 407. The court stated that "where the alleged negligence concerns the physical effects of the vaccine upon the body, Congress intended resort to the [Vaccine Act] first." Id. at 406. The court explained, "If it is alleged that the injury is related to the physical effects of the vaccine, whether the alleged negligence occurred before the administration of the vaccine, . . . or soon thereafter, . . . it must be brought under the [Vaccine Act]." Id. The court concluded:

The injury and death in this case are associated with the physical effects of the vaccine, as petitioners' counsel admitted during oral argument. We are required, therefore, to dismiss this action under § 300aa-11(a)(5)(B) because petitioners have pending a state action for a "vaccine-related . . . death." Similarly, the state court will have to consider whether to dismiss the state action under § 300aa-11(a)(2)(B). If that occurs, petitioners may invoke the tolling provision of § 300aa-11(a)(2)(B) in order to refile a petition under the [Vaccine Act] within one year of the state court dismissal.

Id. at 406-07.

DISCUSSION

I.

The Aulls have timely appealed the decision of the Court of Federal Claims dismissing their Vaccine Act petition under 42 U.S.C. § 300aa-11(a)(5)(B). We have jurisdiction to review the decision of the Court of Federal Claims pursuant to 42 U.S.C. § 300aa-12(f). Issues of statutory interpretation and jurisdiction under the Vaccine Act are questions of law, which we review de novo. Martin v. Sec'y of Health & Human Servs., 62 F.3d 1403, 1405 (Fed. Cir. 1995).

II.

The Court of Federal Claims dismissed the Aulls' petition under 42 U.S.C. § 300aa-11(a)(5)(B). As seen, the statute provides as follows: "If a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such person may not file a petition under subsection (b) of this section for such injury or death." 42 U.S.C. § 300aa-11(a)(5)(B) (emphasis added). This case presents the question of whether post-vaccination medical malpractice with respect to treating a physical symptom of the vaccination is "vaccine-related." The Aulls contend that a state court action for post-vaccination negligence of a vaccine administrator with respect to treating a physical symptom of the vaccination is not "vaccine-related" for purposes of section 300aa-11(a)(5)(B). They argue that "[t]he complained of actions performed by Dr. Danhauer in the state action are facially unrelated to the vaccine's effects." Pet'r Br. at 18. We do not agree.

05-5139                                8

III.

We think this case is squarely controlled by <u>Amendola v. Secretary of Health & Human Services</u>, 989 F.2d 1180 (Fed. Cir. 1993). In that case, the parents of Christopher Amendola sued the doctor who administered DPT vaccine to their son for malpractice in state court in New York. The Amendolas alleged that the doctor was negligent in administering a third injection of the vaccine in spite of negative reactions caused by the second injection. <u>Id.</u> at 1181. The jury found in favor of the doctor after he denied that he was told of the negative reactions before administering the third vaccination. <u>Id.</u> After the state court judgment became final, the Amendolas sought compensation under the Vaccine Act by filing a petition in the Court of Federal Claims. <u>Id.</u> We affirmed the decision of the Court of Federal Claims that sustained the special master's decision dismissing the Vaccine Act petition on the ground that the injury upon which the state court action was based was "vaccine-related." <u>Id.</u> at 1187. We stated:

> To the extent it is the position of the Amendolas that the injury in this case is not really "vaccine-related," we reject that argument as well. . . . In the case before us, in which the alleged negligence was a judgment call about whether to administer the vaccine under the circumstances presented, and the injury resulted from the administration of the vaccine, we have no difficulty in concluding that any resulting injury from the vaccine is vaccine-related.

<u>Id.</u> at 1186-87 (emphasis in original). We explained that "[i]f this were a situation in which the direct cause of the injury was a contaminated needle, or the doctor's negligent dropping of an infant patient, or other negligence facially <u>unrelated to the vaccine's effects</u>, then the hypotheticals posed by the Amendolas might require further examination." <u>Id.</u> (emphasis in original).

In their claim in Kentucky state court, the Aulls seek recovery for alleged malpractice on the part of the health care providers who treated Blake for the conditions that arose following his vaccinations on September 8, 2000. What brings this case under the sweep of Amendola is that those conditions were "vaccine-related." This is made clear by the Aulls' state court complaint, which alleges malpractice in the treatment of Blake's pneumonia; by the statement of counsel at oral argument in the Court of Federal Claims that the vaccination "weakened this child's immunity system, his ability to fight whatever might attack his body. . . . And so when he was weakened by that immunization . . . when he developed pneumonia . . . and went to the hospital, his body was further weakened by the vaccine. The pneumonia is what really killed this child"; and by the "Clarification of Petitioner's Claims" that was filed in the Vaccine Act proceedings on July 20, 2004. The Clarification stated:

> There is necessarily a factual overlap [between] this vaccine claim and the negligence case in state court. Dr. Schweller's report of February 6, 2004, mentions that [the Aulls] were given assurances by the physician who administered the September 8, 2000, immunization that the immunization would not adversely affect his health. He further states that from the information the parents were given this immunization was an unwise course of conduct due to prior reactions from earlier immunizations, as well as the fact that Blake had a seizure disorder and a chronic neurologic disorder, both being contraindications for the immunization.
>
> The . . . September 8, 2000, immunization directly caused a significant aggravating further injury to Blake, that being an increased strain on his metabolic system to the point that the mitochondrial system decompensated, causing the child to have seizures, fever, and a state of respiratory failure leading directly to his death.
>
> Plainly speaking, the . . . immunization weakened Blake's ability to fight pneumonia. . . . Thus, we have a death due to an immunization which significantly aggravated a preexisting

chronic encephalopathy which created an inability to fight off an undiagnosed, untreated pneumonia which was the actual and direct cause of Blake's death.

<u>Aull II</u>, 65 Fed. Cl. at 405-06.

In sum, the Aulls' suit in Kentucky alleging post-vaccination negligence in the treatment of the conditions that were caused by the vaccinations Blake received on September 8, 2000, is not "facially unrelated to the vaccine's effects." <u>See</u> <u>Amendola</u>, 989 F.2d at 1186-87. Accordingly, the Court of Federal Claims did not err in dismissing the Vaccine Act petition under 42 U.S.C. § 300aa-11(a)(5)(B) because the Aulls have a pending civil action (in Kentucky state court) for a "vaccine-related" injury.

CONCLUSION

For the foregoing reasons, the decision of Court of Federal Claims is affirmed.

COSTS

Each party shall bear its own costs.

<u>AFFIRMED</u>